(No. 1714, December 2, 1914)

STATE OF NEW MEXICO, Appellee, vs. H. S. HOLLOWAY, Appellant.

### SYLLABUS BY THE COURT.

1. No alleged errors, unless they are jurisdictional, will be considered, except those which are set out in the motion for a new trial.                                    P. 532

2. The common law rule upon the right to a trial by jury of the visne or neighborhood, if that be the rule in its strictest sense, has been long modified by legislation permitting

State v. Holloway, 19 N. M. 528

a change of venue where an impartial jury was not obtainable in the county where the alleged crime was committed.

P. 542

3.   Where a trial by an impartial jury can be secured in the county where the crime is committed, the accused can not be deprived of a trial there, even under the sanction of our legislation upon the subject of change of venue.

P. 543

4.   The constitutional guaranty of a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, is not of a right to be tried in the county, but in the county or district in which the offense is alleged to have been committed, if an impartial jury can be secured therein.

P. 545.

5.   The power conferred upon district courts by this statute is one which ought to be exercised with great care and deliberation; and a change of venue, on behalf of the people, should be made only after a showing which convinces the court that public sentiment is in such a state as to render improbable a fair and impartial trial.

P. 546

6.   Held: By Sec. 26, of Chap. 57, Laws of 1907, it is provided that the stenographer shall file the transcript of testimony with the clerk of the court in which the action was tried, and thereupon either party may give five days notice to the opposite party of his intention to apply to the judge to have the transcript signed and sealed as a bill of exceptions.

P. 548

7.   The facts urged in support of a motion for a new trial upon the ground that the jury was allowed to separate, unsupported by proof of such facts by affidavit, or otherwise, and not borne out by the record is an insufficient showing and does not entitle the defendant to a new trial upon such ground.          P. 548

State v. Holloway, 19 N. M. 528

Appeal from District Court, Dona Ana County; Edward L. Medler, Presiding Judge. Affirmed.

W. H. H. LLEWELLYN and J. F. BONHAM, Las Cruces, N. M., Attys. for Appellant.

Sufficiency of indictment. C. L. 1897, Sec. 1122; Session Laws 1905, Chap. 129, Sec. 1; 7 and 8 Geo. 4 c 29. Par. 47; Bishop's Directions and Forms, par. 403; State v. Harmon, 106 Mo. 635, 18 S. W. 128.

Change of venue against defendant's objection violated his constitutional rights.    N. M. constitution, Sec. 16. C. L. 1897 Secs. 7311-7318; Constitution Art. 6, Sec. 7; 2 Cooleys' Blackstone (Third Edition) 491; People v. Powell, 25 Pac. 481, 11 L. R. A. 75; Wheeler v. State, 24 Wis. 52; Osborne v. State, 24 Ark. 629; Olive v. State, 7 N. W. 444.

Constitutional rights. State v. Kindig, 55 Kans. 113, 39 Pac. 1028; State v. Bunker, 38 Kans. 737, 17 Pac. 651; State vs. Gut. 13 Minn. 341; State vs. Potter, 16 Kans. 80; State vs. Knapp et al., 40 Kans. 148, 19 Pac. 728; Bishop's Cr. Pr. Vol. 1, Sec. 50, page 21; Mayes v. State, 3 Heisk 175; Craig v. State, 3 Heisk 227; Speck v. State, 7 Bax. 46; State v. Smiley, 98· Mo. 605; State v. Kemp, 34 Minn. 61; State v. Albee, 61 N. H. 423, 60 Am. R. 325; State v. Danton, 6 Coldw. 539; State v. Trinklaw, 40 Neb. 759, 59 N. W. 370.

Effect of unconstitutional statute. Dempsey v. State, 94 Geo. 766; 22 S. E. 57; State v. Howard, 31 Vt. 414; Ex. Party Rivers, 40 Ala. 712; Kirk v. State, 1 Coldw. (Tenn.) 344; Miller v. People, 230 Ill. 65; 82 N. E. 521, .C. L. 1897, Sec. 3398.

Improper admission of evidence as to acquisition of capital stock. State v. Silva, 130 Mo. 440, 32 S. W., 1007.

Proof as to conversion of money. Watson v. State, 64 Geo. 61; Block v. State, 44 Tex. 620.

Erroneous instruction as to reasonable doubt. Terr. v. Ayer, 15 N. M. 581.

Court should instruct jury in regard to circumstantial evidence. Terr. v. Lermo, 8 N. M. 566, 46 Pac. 16.

Jury should not separate.   U. S. v. Swan, 7 N. M. 306-13, 34 Pac. 535.

IRA L. GRIMSHAW, Asst. Attorney General, for Appellee.

The indictment is not defective.   Only questions of jurisdiction can be raised for the first time on appeal.  U. S. v. Cook, 15 N. M. 127.

Duplicity must be raised.   1 Bishop's Crim. Pro. (Second Edition), pages 88, 361, 362, 369, 395 and 396. Bishop's Directions and Forms, Sec. 403. Terr. v. Hurt, 16 N. M. 152-153 as to conclusions.

No error in change of venue. C. L. 1897, Secs. 2879, 2881; N. M. Const. Art. 2, Sec. 14; Thompson v. Utah, 170 U. S. 343, 346; C. L. 1897, Sec. 3398; In re Nelson 102 N. W. 885; State v. Kindig, 55 Kans. 113; Olive v. State, 7 N. W. 444; State v. Gut. 13 Minn. 341; Wheeler v. State, 24 Wis. 52; Kansas v. Knapp., 40 Kans. 148; State v. Bunker, 38 Kans. 741; State v. Smiley, 98 Mo. 605; State v. Kemp, 34 Minn. 61; State v. Albee, 60 Am. R. 325; State v. Denton, 6 Colw. (Tenn.) 539, 541; State v. Trinklaw, 40 Neb. 759; Dempsey v. State, 94 Ga. 766; Vermont v. Howard, 31 Vt. 414; Ex Parte Rivers, 40 Ala. 712; Miller v. People, 230 Ill. 65; People v. Powell, 25 Pac. 481; Glinnan v. Phelan, 140 N. W. 87; Hewitt, et al. v. State, 43 Fla. 194; Armstrong v. State, 1 Coldw. 337; State, ex. rel. v. McCarthy, 52 Ohio State, 363; Barry v. Traux, 112 Am. St. R. 662; People v. Furhmann, 103 Mich. 593, 61 N. W. 865; People v. Baker, 3 Abb. Pr. 42; Mischer v. State, 41 Tex. Cr. Rep. 212, 96 Am. St. R. 780; State v. Durflinger; 73 Ohio State, 154; People v. Vermilyea et al., 7 Cow. 108, 139; People v. Peterson, 93 Mich. 27; Zinn v. District Court, 114 N. W. 472; People v. Webb, 1 Hill (N. Y.) 179; Cox et al. v. State, 8 Tex. A. 254.

No error in permitting introduction of evidence concerning stock transactions. Kerr v. People, 110 Ill. 627; Reeves v. State, 95 Ala. 31; State v. Klasner, 19 N. M. 474.

SUPPLEMENTAL BRIEF OF APPELLEE.

Change of venue. C. L. 1897, sec. 3398; Session Laws, 1851, sec. 17, p. 144; Session Laws 1882, Ch. 9; C. L. 1897, Sec. 2879; Session Laws 1889, C. L. 1897, sec. 2881; N. M. Const. Art. II, sec. 12.

STATEMENT OF FACTS.

Appellant was indicted in the district court for Otero county and charged with embezzlement of thirty-five hundred dollars which came into his hands by virtue of his employment as cashier of the Citizens State Bank of Tularosa. Upon motion of the state for a change of venue the court transferred the trial of the cause to Dona Ana county, where the appellant was tried and found guilty. From that verdict and the judgment of the court appellant appealed.

OPINION.

HANNA, J.—The first point made by appellant is that the indictment is defective, several alleged defects being pointed out. The first being with respect to alleged insufficiency of proof as to lack of knowledge on the part of the grand jury as to the christian name of the defendant. This can hardly be said to go to the insufficiency of the indictment. We assume that a second point is made, though this is not clear from appellant's brief, that there is an insufficient allegation as to the charge of the indictment as to the money embezzled. The objections, however, not going to the jurisdiction of the trial court over the parties or subject matter, and being raised here for the first time, will not now be considered. The grounds here urged, in this connection, were not assigned as grounds of the motion for a new trial and as was held by our Territorial Supreme Court, in the case of U. S. vs. Cook, 15 N. M. 124:

"No alleged errors, unless they are jurisdictional, will be considered, except those which are set out in the motion for a new trial."

It may be urged that appellant has raised the question of whether the indictment states an offense or not and in so doing is urging a jurisdictional question. It being contended by appellant that the "indictment attempts to charge and is for straight larceny or there are in one count in the indictment two crimes attempted to be charged, larceny and embezzlement."

Our statute under which this indictment was drawn, Sec. 1122, C. L. 1897, defines the crime of embezzlement and declares it to be larceny. The indictment very closely followed the language of the statute, and, therefore, charged the crime of embezzlement.

The facts here, while not closely resembling those of the case of Territory vs. Hurt, 16 N. M. 152, are analogous thereto and we refer to that opinion, by Mr. Justice Parker, in support of our conclusion that the count is not duplicitous.

The next and essentially important point in this case is that the granting of a motion for a change of venue, applied for by the state, violated the constitutional right of appellant to a fair and impartial trial by a jury of the county or district where the offense was alleged to have been committed. The theory of this contention is based upon the proposition that Secs. 2879 and 2881, C. L. 1897, in so far as they confer upon the state the right to a change of venue, are in conflict with that portion of Sec. 14, of Art. II, of the state constitution, which provides:

"In all criminal prosecutions the accused shall have the right to   *   *   *   a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

It is admitted that this question is properly before us and not subject to objections here urged against the bill of exceptions to be later considered in this opinion.

We are of the opinion that the provisions of the two sections referred to are general in their scope and do not limit the right to apply for a change of venue to the defendant alone. By appellant it is contended that our constitutional provision quoted, supra, is declaratory of the common law, which affords the accused an absolute right to a trial by a

jury of the county wherein the crime is alleged to have occurred; that the word "district" in the constitutional provision cannot be given any force or effect; that no change of venue can be granted to the state, without the consent of the accused; that the statute cannot enlarge the constitution, nor take away the right guaranteed by the constitution.

By the attorney general it is urged that the constitution must be interpreted by the same rules as are used in the interpretation of statutes, and that the cardinal rule, is to discover the intention of the constitutional convention; that the statute does not limit the right to a change of venue to the accused person; that the word "district", appearing in the constitutional provision, was to have a broader meaning than "county" and that some meaning must be given it; that the constitutional guarantee presupposes that a fair and impartial jury can be obtained and would not apply where it is adjudicated that a fair and impartial jury cannot be obtained in the county; that the common law gave the accused an absolute right to a jury trial within the county where the offense was alleged to have been committed, but that this rule of the common law was qualified in cases where an impartial jury could not be obtained, in which event the crown had a right, as a matter of necessity, and, to enforce the spirit of the right of the accused to an *impartial* jury to change the venue to a county wherein such conditions did not exist; that the record in this case is conclusive that an impartial jury could not be obtained in Otero county and, therefore, the very premise of the right to invoke the constitutional guaranty is absent, and the statute, in such cases, cannot properly be said to conflict with the constitutional provision cited.

Concededly, there is a conflict of authority upon this question and our attention is directed to numerous authorities more or less supporting each contention, all of which we have examined. It is unnecessary to review all of these authorities, in this opinion, and reference will be made to only those more nearly in point.

In the case of In Re Nelson, 19 S. D. 214, 102 N. W., 885, the Supreme Court of South Dakota held, in construing a provision of the constitution, similar to ours now under consideration, that the word "district" must be held to mean the trial district or territory within which the jury is summoned. This holding finds support in the following cases: People vs. Powell, (Cal.) 25 Pac. 481, 11 L. R. A. 75; Olive et al vs. State (Neb.) 7 N. W. 444; Wheeler vs. State, 24 Wis. 52; Osborn vs. State, 24 Ark. 629; State vs. Knapp, 40 Kans. 148; State ex rel. Scott vs. Crinklaw, 40 Neb. 759.

It is to be observed in the consideration of the foregoing cases that the common law right of the defendant to a trial by a jury of the visne, or neighborhood, was the basis of the ruling in each and that no exception to the rule was considered.

If there be no exception to the rule it might well be argued that the state would not be entitled to a change of venue, although it might be impossible to secure an impartial jury in the county where the crime was committed. In other words, should it be found that a strong prejudice existed in favor of the accused in that venue could the defendant be heard to insist upon an alleged right to a partial jury and urge in support of this right the constitutional guaranty of an impartial jury. Such refinement would tend to make the administration of justice a farce and bring down upon courts a just criticism.

We do not dispute the existence of the general rule of the common law. It arose for the protection of individuals against the tyranny of a government, not always zealous of the rights of persons, and, at a time when means of communication were difficult and a change of venue might work great injustice. Under modern conditions the reasons for the rule, or its arbitrary enforcement, have largely ceased, and stronger reasons for occasional departure therefrom have arisen.

At an early day it was permissible for jurors to act upon personal knowledge of events, now we insist upon such strict impartiality that knowledge of events, at least suf-

ficient to create an opinion, is, generally speaking, a disqualification of the juror.

In these days of publicity when the smallest community is seldom without its newspaper, it has been growing more difficult to secure the impartial jury, as it is now known. Therefore, the exception to the rule has arisen and its necessity becomes apparent.

Mr. Justice Bailey, speaking for the Supreme Court of Illinois in the case of Watt vs. People, 1 L. R. A. 403, contended that the framers of the constitution recognized the infirmities of the common law rule (limiting jurisdiction in criminal prosecutions to the county where the crime was actually committed) and, therefore, modified the phraseology making the section read "in all criminal prosecutions the accused shall have a right to    *    *    *    a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." It is further urged by Justice Bailey that this modified phraseology may be fairly regarded as evidencing an intention to relax in some degree the rigid rule of the common law formerly prevailing. We agree with this conclusion, and while the facts of the two cases are dissimilar, they are analogous in point of logic, and the constitutional provisions under consideration in both are identical.

Can it be said that a fair and impartial trial can be had when as to either side, in point of fact, it would be partial? As was well said by the court of appeals of the state of Texas, in the case of Cox et al. vs. State, 8 Tex. Cr. App. Rep. 254, at 281:

"We cannot imagine a state of case in which a trial at law in any event could be said to be fair and impartial, or vice versa, when it is so only as to one party, and directly the opposite as to the other. From a legal standpoint, the proposition is worse than paradoxical,—it amounts to an absurdity."

As indicated, by this opinion thus far, we agree with those courts which have held that an exception to the general rule must be made when an impartial jury cannot be obtained, assuming that statutory authority for a change

·of venue exists, and that this was the true rule of the common law.

While of this opinion, we desire to make our position plain, it is our conclusion that by the common law an accused had the right to be tried in the county in which the offense was alleged to have been committed, where the witnesses were supposed to have been accessible, and where he might have the benefit of his good character if he had established one there, but if an impartial trial could not be had in such county it was the practice to change the venue upon application of the people to some other county where such trial could be obtained.

We find this opinion of the rule as it existed at the common law supported by the following authorities: Hewitt et al. vs. State, 43 Fla. 194; State vs. Miller, 15 Minn. 344; Barry vs. Traux, (N. D.) 112 Am. St. Rep. 662; People vs. Webb, 1 Hill 179; People vs. Peterson, 93 Mich. 27; 1 Chitty's Crim. Law, 201.

It was this right of trial by jury that is preserved, or is to remain inviolate, under the provisions of our "Bill of Rights" and the constitutional guaranties of the numerous state constitutions containing similar provisions.

From an examination · of Blackstone's Commentaries (Book IV. p. 351) it would appear that the common law rule was as strict as is contended by appellant and we think that may have been the case possibly subject to the exception in those cases where it was found impossible to secure an impartial jury, which exception may have been of later development and thereby explains the divergence of opinion.

We are not controlled, necessarily, by the common law rule, whatever it may have been, and assuming that it was as strict as contended for and not subject to the exception pointed out, nevertheless, our legislature has evidenced an intention to adopt a different rule than that contended for and it remains to consider whether this rule, so adopted, was in force at the time of the adoption of our constitution, and if so whether it be inconsistent with the provisions of our constitution and therefore of no binding force at this time.

It, therefore, becomes necessary to consider our legislation upon the subject with considerable attention to details.

By Sec. 5, of the Bill of Rights, as promulgated by General Kearny, September 22nd, 1846, it was declared that "the right of trial by jury shall remain inviolate". Section 6 further providing, among other things, that in criminal cases the accused shall have the right to a "speedy trial by a jury of his county".

These provisions are of but little value and throw no light upon the present question unless it be argued that they declare the common law rule, as contended for by appellant. The county of the accused might be the county of his domicile, and not necessarily the county where the crime was committed, which would indicate that it was not the common law rule that was adopted.

At the same time General Kearny established what has since been known as the "Kearny Code of Laws", and by Sec. 15 of Article III of the title "Crimes and Punishments" of this code, it was provided that the act should extend to all crimes beyond the limits of any county or settlement within the territory, and that the offender should be brought to the most convenient "county or district" in the territory and there prosecuted.

Again, this is of little value except as it may throw some light upon the legislation that followed at an early date. Under the title "Practice of Law in Criminal Cases", of the same code, by Sec. 13, it was provided that "all trials of criminal offenses shall be had in the county in which they were committed" except as to offenses committed near boundaries where either county was designated as a proper venue, and with a further exception in the case of where death resulted in a county of this territory while the mortal wound had been inflicted in another county or outside the state, the county where death resulted being designated as the venue. This section (Thirteen) appears as Sec. 3398 of the C. L. 1897.

On September 30th, 1850, the Organic Act establishing the territory of New Mexico, was approved, which act, however, contained no specific provision concerning the right

of trial by jury, but did create a legislature with power to legislate upon all rightful matters consistent with the constitution of the United States, and the organic act, subject to a right of disapproval resting in the congress of the United States.

The first territorial legislature enacted a law, which was not disapproved by Congress (Sec. 17, Chap. 27, p. 144, Laws of 1851), providing that the venue in both civil and criminal cases might be changed, to the nearest county free from exception, when the judge was interested, or when the moving party should make oath that he could not have justice done him in the county where the suit was pending, setting forth the cause and supporting same by oaths of at least two disinterested persons, "provided that neither party shall be allowed to change the venue in the same case more than twice." This act of 1851, was amended by Sec. 1, of Chap. IX, Laws of 1882, and, as amended, appears as Sec. 2879, C. L. 1897, which reads as follows:

"Sec. 2879. The venue in all cases, both civil and criminal, shall be changed to some county free from exception, whenever the judge is interested in the result of such case; and may be changed in any case, in which it shall appear that either party cannot have justice done him at a trial in the county in which such case is then pending, or for any other proper cause, satisfactory to the judge before whom the motion is made."

The amendment, it will be observed, enlarged the right by removing the restriction as to a change to the nearest county, and the requirement of an oath of the moving party and the supporting oaths of at least two disinterested persons.

The original act of the legislature, as amended, indicated an intention to depart even radically from the common law rule, and has stood without change unless the Act of 1907, hereafter referred to, or the constitution itself has modified the rule as thus adopted.

As a matter of fact, the so-called common law rule, whatever it may have been, was wiped out by the legislation referred to.

It is necessary, however, to consider other legislation of

the same period. In 1854, an act defining crimes and pun-
ishments was passed by the territorial legislature, Sec. 2,
of Chap. 2, now appearing as Sec. 1047, of the Compiled
Laws of 1897, being a portion of the act in question. It is
as follows:

Sec. 1047. In all criminal   prosecutions,   the accused
shall enjoy the right to be heard by himself or counsel, or
any other person who may   defend him; to demand the
nature and cause of the accusation against him; to meet
the witnesses face to face; to have compulsory process to
compel the attendance of witnesses in his behalf, and in pro-
secutions by indictment or information, to a speedy public
trial by an impartial jury of the county or district where-
in the offense shall have been committed, which county or
district shall have been previously ascertained by law."

This provision must be considered in connection with the
Act of 1851, and both read together if possible. We do
not deem the two acts inconsistent or in such conflict that
the two cannot stand. If, however, they are to be so con-
sidered the legislature by its subsequent Act of 1882 (quot-
ed supra as Sec. 2879, C. L., 1897), did not assume that
the Act of 1851 had been repealed by implication or other-
wise, but proceeded to amend it as a valid existing act and
enlarged it, or at least made it less restrictive in its oper-
ation.

Going further, we find the legislature of 1889 speaking
upon the same subject of change of venue. (See Sec. 1,
Chap. 77, Laws 1889). The enactment now appears as Sec.
2881, C. L. 1897, and is as follows:

"Sec. 2881. The venue in all civil and criminal cases
shall be changed whenever the judge is interested in the
result, or is related to, or has been counsel for either party,
or when the party moving for a change shall file in the
case an affidavit of himself, his agent or attorney, stating
that he believes such party cannot obtain a fair trial in the
county wherein the cause is then pending, either because
the adverse party has an undue influence over the minds
of the inhabitants of such county, or the inhabitants of
such county are prejudiced against such party, or because
by reason of public excitement or local prejudice in such

county in regard to the case or the questions involved therein, an impartial jury cannot be obtained in such county to try the same. Such affidavit must be supported by the oaths of two disinterested persons that they believe the facts therein stated are true."

This section is in effect a reenactment of the provisions of the act of 1851, as to change of venue, with some additions, and is clearly an expression of the legislature that changes of venue should lie in favor of "either party," "in all civil and criminal cases" when an impartial jury cannot be obtained. At most, this act can only be considered as a modification or amendment of the act of 1882 (Sec. 2879, C. L. 1897) although both acts were carried into the compilation of 1897.

We therefore find that commencing with 1851, down to the present, there had prevailed a consistent legislative policy favoring changes of venue to both sides in criminal cases. It may be urged that that portion of Sec. 21 of Chap. 36, Laws of 1907, which is as follows:

"No person shall be twice put in jeopardy of liberty or life for the same offense, nor shall any person be again put upon trial for the same offense, after a verdict of not guilty, and the right of trial by jury shall remain inviolate," should be considered as a departure from the legislative policy referred to, but again it is to be borne in mind that it is the duty of courts to so construe statutes, apparently in conflict, that both may stand and we do not consider that the previous acts upon the subject of change of venue impaired or were designed to violate the right to a jury trial. If the common law rule did, in all its strictness, give an absolute right to a jury of the visne or neighborhood, it seems quite clear that the legislature, with presumed knowledge of the existence of the earlier statutes changing such rule, and in the absence of an express repeal of such acts (although numerous statutes were singled out for repeal by the act of 1907) did not intend to revive a rule of the common law by implied repeal of statutes changing such rule, if an implied repeal would so operate.

It remains for us to consider whether the constitution has set aside the legislative provisions referred to.

By Sec. 12, of Article II (Bill of Rights) it is provided that:

"Sec. 12. The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."

This refers, as we consider it, to the right as it had theretofore existed in the territory of New Mexico:

By the provisions of Sec. 14, of the same article, a somewhat more difficult question is presented by that portion of the section providing that all accused persons shall have the right to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed. This question has been largely covered by us in this opinion from the standpoint of what the common law right to a trial by jury was for the purpose of ascertaining whether the constitutional provisions were inconsistent with the existing statutes upon the right to a change of venue and had, therefore, terminated the operation of such legislation with the coming of statehood and reinstated the common law rule through the force and effect of the constitutional provisions which might be said to be declaratory of the common law rule upon the subject.

Upon this question we have concluded that the common law rule upon the right to a trial by jury of the visne or neighborhood, if that be the rule in its strictest sense, has been long modified by legislation permitting a change of venue where an impartial jury was not obtainable in the county where the alleged crime was committed. The framers of our constitution, in our opinion, recognized that the so called common law rule had been departed from in our legislation and, as we have pointed out in this opinion, by Sec. 12, of the Bill of Rights, the right of trial by jury to be secured to all and to remain inviolate, was the right as it had theretofore existed in the territory of New Mexico.

We have endeavored to show that at common law it is possible that an exception to the strict common law right of a jury of the visne, or neighborhood, had developed as to those cases where an impartial jury could not be secured, but even were this not the fact, the strict common law rule had been thus qualified by our legislation which the fram-

ers of our constitution had in mind when referring to the right as it had "heretofore existed." In Sec. 14, of the Bill of Rights, our constitution seeks to guarantee the right of an impartial jury rather than the right to a jury trial as known to the common law, as is contended by counsel for appellant, which right of jury trial had been already fully provided for by Section 12, of the Bill of Rights.

In considering the Powell case, in this connection, (25 Pac. 481) it is well to bear in mind that the Bill of Rights of the constitution of the state of California did not guarantee an impartial jury as does ours, so that this very important difference existed and clearly shows, if it indicates anything, and it cannot be without meaning, that the framers of our constitution were not adopting a provision (by adopting Section 12, of the Bill of Rights) upon the right to a jury trial with the strict common law rule in mind, unless they recognized the exception to the rule which we have pointed out in this opinion.

It is probable that if they intended to declare the common law rule as a controlling principle they recognized the exception and made it a part of the controlling principle applicable to the right to a trial by jury, or else, recognizing the strict common law rule as without exception they have elected to depart therefrom in the declaration of rights of our citizens in this respect, (Section 12), and to adhere to the policy of our territorial legislatures as evidenced by the statutes upon changes of venue when impartial juries are not to be obtained. In all that we have had to say upon this subject we desire to be understood as holding that where a trial by an impartial jury can be secured in the county where the crime is committed, the accused can not be deprived of a trial there, even under the sanction of our legislation upon the subject of change of venue. This is necessarily so under our legislation as to the right to "a speedy public trial by an *impartial* jury of the county", if one be obtainable.

The constitution of the state of North Dakota, like that of California, does not guarantee an impartial jury by the provisions of its bill of rights, as does ours, and the reasoning of the Supreme Court of that state, in the case of

Barry vs. Traux, 13 N. D. 131, 99 N. W. 769, 112 Am. St. Rep. 662, 65 L. R. A. 762, is of greater force as applied to the case under consideration. The reasoning of this opinion is so clear that we desire to quote, with approval, from it at some length. The court said:

"It is entirely clear that the constitutionality of the statute authorizing a change of the place of trial upon the application of the state turns upon the meaning to be ascribed to the phrase 'right of trial by jury'. What is the scope and extent of this right, which the declaration of Rights secures to all and declares shall remain inviolate? Is it an unconditional right to a trial by a jury drawn from the county where the offense was committed, and prohibiting a change of place of trial to another county when a fair and impartial trial cannot be had in the county where the venue was originally laid? If it is true, as counsel for plaintiff contend, that 'the right of trial by jury' thus guaranteed is an unqualified right to a trial by a jury of the county where the offense was committed, and that no person can, without his consent, be tried in any other county, it is apparent that no act of the legislature can deprive him of that right. Section 8122 of the Revised Codes of 1899, which confers the right to change the place of trial upon the state, would in that event be unconstitutional and void, and would furnish no legal justification for the order in question. If, on the other hand, the right to a trial by jury of the county of the offense conditioned upon the possibility of a fair and impartial trial in that county, it will be conceded that section 8122, supra, is constitutional and valid. The question involved is an important and delicate one; important, because it calls for a judicial declaration as to the scope of the most important of constitutional rights, the right of trial by jury; delicate, because it involves the consideration of an alleged infringement of that right by a co-ordinate branch of the government. Proper deference for legislative authority has given rise to the settled rule that all acts of the legislature will be presumed to be valid and constitutional, and courts will declare them void only when it is clear that they violate the fundamental law. In case of doubt, the presumption of

validity will prevail and the law be sustained. When, however, the conflict is clear, the duty is cast upon the court to declare the conflict, and thus sustain the integrity of the constitution.

We are convinced that the legislation in question is constitutional and valid, and this conclusion does not rest upon the mere presumption of validity which attends all legislative acts. On the contrary, we think it is demonstrably clear that the 'right to trial by jury' which is secured by the declaration of rights is in no respect impaired by the act of the legislature authorizing a change of place of trial to another county, upon the state's application, when a fair and impartial trial cannot be had in the original county. It will be noted that the constitution does not enumerate the details or incidents of the right of trial by jury. This omission, however, gives no authority to the legislature or to the courts to destroy by legislation or by judicial construction any of the substantial elements of the right of jury trial which were intended to be secured. The constitution refers to 'the right of trial by jury' as a right well known and commonly understood at the time of its adoption, and it is the right so understood which is secured by it. Our duty in this case is therefore to ascertain whether it was the understanding of the framers of the constitution, and the people who adopted it, that the right of trial by jury included, as one of its substantial elements, an absolute right to a trial by a jury of the county where the offense was committed. If such was their intent it must be given effect, the same as though it had been expressly written into the constitution. We are unable, however, to find any ground whatever to sustain the existence of any such intent. On the contrary, there is, in our opinion, convincing evidence that the right of a trial by jury as that right was known at the time of the adoption of the constitution, did not include an absolute right to a trial by a jury of the county where the offense was committed, but that the right was conditioned upon the possibility of a fair and impartial trial being had in that county. In other words, the right of trial by jury, as it now exists, with the right on the part of the state to secure a change of

venue to another county when necessary for a fair and impartial trial, is the same as existed when the constitution was adopted."

See also, People vs. Fuhrmann, 103 Mich. 593, 61 N. W. 865; Commonwealth vs. Davidson, 91 Ky. 162, 15 S. W. 53; Mischer vs. State, 41 Tex. Crim. Rep. 212, 96 Am. St. 780; 7 Cowan 108-139; Zinn vs. District Court (N. D.) 114 N. W. 472.

A recent opinion by the Supreme Court of Michigan, Glinnan et al vs. Phelan, 173 Mich. 674, 140 N. W. 87, is most enlightening, upon the point under consideration and all the authorities available seem to have been considered. A dissenting opinion by Justice Brooke ably sets forth the contrary view which is answered by Justice Bird, who concludes his opinion with a cautionary admonition as to the case with which the power in the courts to change the venue, on behalf of the people, should be exercised. We quote from this portion of his opinion with approval as applicable to the courts of this State. In this connection Mr. Justice Bird said:

"The power conferred upon circuit courts by this statute is one which ought to be exercised with great care and deliberation; and a change of venue, on behalf of the people, should be made only after a showing which convinces the court that public sentiment is in such a state as to render improbable a fair and impartial trial. And I am of the opinion that this court should stand ready to correct at the earliest moment any abuse of power in this regard, before it has resulted in harm to the accused."

In State vs. Durflinger, 73 Ohio State 154, 76 N. E. 291, the question of the right of the state to a change of venue was carefully considered, the court holding in favor of the right. People vs. Powell, 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75, and Osborn vs. State, 24 Ark. 629, probably the leading cases opposed to the view that the right exists, under statutory authority, were referred to and held to be far opposed to the better reason and clear weight of authority, and therefore not to be followed.

The constitutional provision under consideration by the Supreme Court of Ohio, in this case, was similar to ours

and guarantees to the accused "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

The same contention was there made, as here, that the words "county" and "district," as employed in this provision, are synonymous and the right given and secured to the accused is the absolute, unqualified right to be tried in and by a jury of the county where the offense is alleged to have been committed, and that unless the defendant consent he cannot be tried in another county. It was held in this case, by the Supreme Court of Ohio, that the constitutional guaranty of a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, is not of right to be tried in the county, but in the county or district in which the offense is alleged to have been committed.

The Supreme Court of Ohio, however, while holding that the term "district" was not synonymous with "county" but intended to designate and include a place or jurisdiction other and distinct from that of the county wherein the offense was committed, pointed out that, in that jurisdiction the term "district" was not to be treated as synonymous with judicial district. We are not concerned with this inquiry, however, as the change of venue, here brought into question, was to another county of the same judicial district and we are not called upon to decide whether a change of venue would lie to a county outside the judicial district, or in fact what is meant by the term "district."

Having concluded that a change of venue will lie in favor of the state, where an impartial jury cannot be had in the county, where the crime is alleged to have been committed, we have disposed of the essential question in the case.

Other assignments of error pertaining to the admission, and sufficiency of evidence and those as to alleged prejudicial instructions are dependent upon the state of the record, which the Attorney General contends does not properly include the transcript of testimony because the clerk

of the court certifies only to the record proper which does not include the transcript of testimony. It appears that the district judge settled the bill of exceptions on the 8th day of June 1914, but it does not appear that the bill of exceptions was ever filed in the office of the clerk.

By Sec. 26, of Chap. 57, Laws of 1907, it is provided that the stenographer shall file the transcript of testimony with the clerk of the court in which the action was tried, and thereupon either party may give five days notice to the opposite party of his intention to apply to the judge to have the transcript signed and sealed as a bill of exceptions. (See Sec. 52, same chapter).

This procedure does not appear to have been observed, at least there is nothing to indicate that the alleged transcript was ever filed in the office of the clerk of the court for which reason the objection of the attorney general to the consideration of the pretended bill of exceptions is well taken and the exceptions cannot be considered.

Even though this were not true we are of the opinion that the exceptions referred to are not well taken.

The only remaining assignment of error is that during the progress of the trial the jury was allowed to separate and a member or members of the jury so separated were not in charge of a bailiff, and that said separation was highly prejudicial to the defendant. This fact was alleged as the sixth ground of the motion for a new trial but was unsupported by affidavits and is not sustained by the record proper.

The fourth ground of the motion for a new trial is that the court allowed the jury to leave the court house and go to the Neal Hotel, where they remained from one-half to three-fourths of an hour, after having heard the argument of counsel and the instructions.

The sixth ground of the motion for a new trial has been stated. It is indefinite in that it says that a member or members were not in charge of a bailiff and no communication between the juror or jurors is asserted, there being nothing whatever to show any misconduct during the asserted separation of the jurors, and, as stated, no proof

whatever of the facts alleged in the motion. It is sufficient, in our opinion, to say that the facts urged in support of a motion for a new trial upon the ground that the jury was allowed to separate, unsupported by proof of such facts by affidavit, or otherwise, and not borne out by the record is an insufficient showing and does not entitle the defendant to a new trial upon such ground.

Even should it be contended that this was a matter not resting in the sound discretion of the trial court, in passing upon the motion for a new trial (See Terr. vs. Emilio, 14 N. M. 147) nevertheless, there must be something before the court upon which it could act, else the presumption as to regularity of the proceedings, at the trial, must prevail.

Finding no error in the record the judgment of the trial court is affirmed, and, IT IS SO ORDERED.

### SYLLABUS BY THE COURT.

