508 P.2d 1292

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**David W. LOPEZ, Defendant-Appellant.**

**No. 9512.**

Supreme Court of New Mexico.

April 13, 1973.

Robert H. McBride, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Randolph B. Felker, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Justice.

Defendant was convicted of first degree murder and sentenced to life imprisonment. He has appealed. We affirm.

He first contends the trial court was without jurisdiction of the subject matter of the case and, therefore, the judgment and sentence are void. His contention is predicated upon the failure of the State to establish that the killing occurred in Bernalillo County where the case was tried. He contends it is uncontradicted that the killing occurred in Sandoval County, which adjoins Bernalillo County on the north. Certainly his contention is not controverted on this appeal. However, the testimony upon which he relies was the testimony of a detective in the Albuquerque Police Department given before the grand jury. This testimony was not presented to the petit jury at trial, and a search of the entire record fails to establish with certainty in which county the murder was committed.

Defendant, decedent and their respective families all resided in Albuquerque, the county seat of Bernalillo County. On the night of the murder, according to defendant's confession, he and the decedent drove northward from Albuquerque to the town of Bernalillo, which is the county seat of Sandoval County. After crossing the Rio Grande at the town of Bernalillo, they turned south on a dirt road toward Bernalillo County. According to the official New Mexico road map the north boundary of Bernalillo County was about six or seven miles distant from the point where they turned south. According to defendant they drove "fast but not very long in time" on this road before he stopped the car. The murder was committed near the place where they stopped.

Defendant, after almost eight years, voluntarily walked into the Albuquerque police station and confessed to the murder. He had been investigated the day following the disappearance of the victim, and again about six months later when her body was discovered in the shallow grave in which he had placed it after killing her. The killing and the burial occurred in an extensive hilly area to the west of the Rio Grande, the City of Albuquerque and the town of Bernalillo. This area is commonly and repeatedly throughout the transcript referred to as the West Mesa.

As already stated, no evidence was presented at trial which definitely established that the murder occurred in either Bernalillo or Sandoval County, but, unquestionably, it occurred in one of them. Defendant was indicted in Bernalillo County and at all times the case was treated as a Bernalillo County case by the police officers, the district attorney's office, and by

the defendant and his counsel, until the question was raised for the first time on this appeal. Defendant's attorney on this appeal is not the same attorney who represented him in the trial below.

Art. II, § 14, N.M. Constitution provides in part:

> "In all criminal prosecutions, the accused shall have the right to * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

Here the offense was alleged to have been committed in Bernalillo County, and this allegation was never expressly challenged until now.

In the early case of State v. Balles, 24 N.M. 16, 172 P. 196 (1918), we held this right to be tried in the county or district to be a right or privilege to a particular venue which " * * * may be waived by an accused person in a number of ways, and that, when he goes to trial in another judicial district, without objection on his part, he has waived the privilege, and cannot be heard to say that the court trying him was without jurisdiction. * * *" Also to the effect that this provision of our constitution confers a personal privilege of venue upon an accused, and that this privilege may be waived, see Smith v. State, 79 N.M. 450, 444 P.2d 961 (1968); State v. Shroyer, 49 N.M. 196, 160 P.2d 444 (1945); State v. Bogart, 41 N.M. 1, 62 P.2d 1149 (1936).

■ To the extent that the language in State v. Glasscock, 76 N.M. 367, 415 P.2d 56 (1966), may suggest or be construed as holding that venue may not be waived, the opinion in that case is hereby overruled.

In addition to the constitutional right of venue conferred upon an accused, defendant relies upon a similar venue provision in § 40A–1–15, N.M.S.A.1953 (2d Repl. Vol. 6, 1972). This provision, insofar as here pertinent, is: "Venue.—All trials of crime shall be had in the county in which they were committed. * * *"

This language of our statute is merely a reiteration of the constitutional right of venue.

We agree with defendant that some jurisdictions view the matter of venue in criminal cases as jurisdictional, but, as already stated, and as reflected by the earlier decisions of this Court, our constitutional and statutory provisions above quoted have been construed and are considered as conferring a personal right or privilege of venue on the accused. This right may be waived by the accused. Defendant recognizes this, but urges that if this be a right which can be waived, certain safeguards should have been followed to assure the genuineness of his waiver. He contends the minimum safeguards to which he was entitled were (1) being advised of his right to have the case tried in the county where the offense was committed, (2) being advised that he could waive this right and have the case tried in another county, and (3) having the trial court convinced that the waiver was genuine. He relies upon State v. Chacon, 62 N.M. 291, 309 P.2d 230 (1957). There is language in the opinion in the Chacon case which gives general support to defendant's contentions, but that language was dictum in that case and it does not specifically concern itself with waiver of the right or privilege with which we are here concerned.

We assume defendant is urging that the record should have affirmatively shown that the trial court fully informed defendant of his right of venue and of his privilege to waive this right, or at least was advised that defendant had been so fully informed; that defendant then affirmatively waived this right; and that the trial court then announced its satisfaction as to the genuineness of this waiver. We cannot agree.

■ The State assumed its obligation of furnishing defendant with counsel, and it was not the duty of the trial court to detail to the defendant all rights he had under the law, or to make certain that counsel

had so fully informed defendant and that defendant had fully understood them.

He obviously had no objections to being tried in the county where he resided at the time of the commission of the offense and at the time of trial. He makes no claim that he did not get a fair or impartial jury or a fair and impartial judge to preside over the trial, and he does not suggest that he was in any way prejudiced by being tried in Bernalillo County rather than in Sandoval County. The framers of our constitution sought to guarantee the right to trial by an impartial jury, rather than an absolute right to trial by a jury of the county wherein the crime is alleged to have occurred. State v. Holloway, 19 N. M. 528, 146 P. 1066 (1914).

■ Conceding, for the purpose of disposing of this question, that the offense was committed in Sandoval County as defendant now contends, we are of the opinion he did waive his right to be tried in that county. He went to trial in Bernalillo County without objection, or without any question as to venue ever having been raised until after he was convicted, sentenced and in this Court on appeal. Clearly this conduct amounted to a waiver on his part within the meaning of the language above quoted from State v. Balles, supra.

In State v. Holloway, supra, upon which defendant also relies, it was stated 19 N.M. at page 543, 146 P. at page 1070:

"* * * where a trial by an impartial jury can be secured in the county where the crime is committed, the accused can not be deprived of a trial there, even under the sanction of our legislation upon the subject of change of venue. * * *"

With this statement we still agree, but the waiver of this right by an accused is not to be confused with an accused's deprivation of this right by the State with or without legislative sanction. We do feel this issue of venue could have been better handled by the State in this case. We also feel if defendant was of the opinion that the proper venue in this case was Sandoval County, and he wished to rely on his right to trial in that county, he could and should have made such known to the trial court, and not wait until he was in an appellate court to first raise the question.

The matter of raising the question in the trial court will be further discussed under defendant's second point in which he claims the trial court erred in denying his motion for a directed verdict. His position is set forth in the following quotation taken from the opinion in State v. Losolla, 84 N.M. 151, 500 P.2d 436 (Ct.App.1972):

"One of the essential elements incumbent upon the State was to establish where the offense occurred, because the law is that a crime must be prosecuted in the jurisdiction where it was committed. * * *"

The Court of Appeals cites State v. Faggard, 25 N.M. 76, 177 P. 748 (1918) as authority for this statement. In the Faggard case, insofar as the issue of jurisdiction was concerned, it is clear the question was whether the crime had been committed in New Mexico or in Missouri, although the decision did not turn upon the issue of jurisdiction. In the Losolla case it is also clear the territorial jurisdiction there in question, and upon which the decision did turn, was that of the State of New Mexico. The Court of Appeals, quoting from defendant's motion to dismiss, stated: "* * * The State has produced no evidence that at the time of the alleged offense the defendant was even in the State of New Mexico. * * *" See also State v. Tooke, 81 N.M. 618, 471 P.2d 188 (Ct. App.1970).

Defendant's motion for a directed verdict in the case now before us was as follows:

"MR. RUNNELS: I want to move for acquittal, directed verdict on the grounds that there has not been—

"* * * * *

"MR. RUNNELS: On the grounds that there has not been identification of

the corpse involved, the person alleged to have been murdered, as Peggy Esquibel.

"* * * *

"THE COURT: Your motion is denied.

"* * * *

"MR. RUNNELS: The defense moves to dismiss on the grounds that the State has not proved all essential elements of a prima facie case.

"THE COURT: If you want to be more specific, you are at liberty to do so.

"MR. RUNNELS: I think that is the only specific I might have had."

No further ruling was made by the court.

Obviously defendant, by his motion and answer to the effect that the only specific objection he had to the State's case was that of his claim of failure on the part of the State to identify the corpse, clearly indicated he either had no reason to question the venue, or had elected to waive his right to be tried in Sandoval County. If he had any intention of questioning venue by his motion, "to dismiss on the grounds that the State has not proved all essential elements of a prima facie case," he must fail. Pettigrew v. State, 346 P.2d 957 (Okl.Cr.1959); Slater v. State, 296 P. 2d 193 (Okl.Cr.1956). The purpose of an objection or motion is to invoke a ruling of the court upon a question or issue, and it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked. See State v. Flowers, 83 N.M. 113, 489 P. 2d 178 (1971); State v. James, 76 N.M. 376, 415 P.2d 350 (1966); State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966); State v. Heisler, 58 N.M. 446, 272 P.2d 660 (1954); State v. Deats, 82 N.M. 711, 487 P.2d 139 (Ct.App.1971); State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970); State v. Favela, 79 N.M. 490, 444 P.2d 1001 (Ct.App.1968); State v. Gray, 79 N. M. 424, 444 P.2d 609 (Ct.App.1968); Petti-

grew v. State, supra; Slater v. State, supra.

By his third point defendant contends he is entitled to a new trial by reason of claimed incompetency of his trial counsel. We have considered the matters relied upon by defendant as support for his position, and have also carefully reviewed the entire record. Before a defendant may properly be held to complain of the inadequacy of counsel, he must show that the trial proceedings leading to his conviction amounted to a sham, a farce or a mockery. State v. Barton, 79 N.M. 70, 439 P.2d 719 (1968); State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967); State v. Wilson, 82 N.M. 142, 477 P.2d 318 (Ct.App.1970). This the defendant has failed to do.

In his final point, defendant claims reversible error on the part of the trial court in allowing a witness to testify to defendant's credibility. He relies upon the following testimony of a qualified psychiatrist who examined defendant and to the objection made by him to the psychiatrist's testimony:

"Q. Based upon your examination of Mr. Lopez and based upon your observing Mr. Lopez in the courtroom and hearing the most part of his testimony, both direct and cross examination, do you have an opinion, Doctor, as to whether or not Mr. Lopez is the type of person or personality that would be likely to commit suicide or attempt suicide?

"A. I think it is certainly possible that he could attempt or might attempt suicide.

"Q. Do you think, based upon the same information, Doctor, that Mr. Lopez is the type of person and has the type of personality that would confess to a crime of this magnitude if he did not commit that crime?"

Objection was made that an answer to this question would invade the jury's province. The court overruled the objection, stating: "Overruled. He can give his opinion. The ultimate question is for the

jury, of course." The questioning then proceeded:

"A. I think Mr. Lopez does have the propensity to act out very violently. I would question whether he would want to confess to a crime of this nature. I cannot understand why he would want to do that. .

"Q. Would doing that be consistent with his past actions and activities?

"A. Confessing to a crime?

"Q. That he did not commit.

"A. I do not think that it is consistent with anything I have heard about his past history."

This line of questioning by the State was prompted by defendant's insistence that he did not kill his victim and that his voluntary confession to the murder was not consistent with the truth. He relies upon the cases of State v. Martinez, 34 N.M. 112, 278 P. 210 (1929) and People v. Williams, 6 N.Y.2d 18, 187 N.Y.S.2d 750, 159 N.E.2d 549 (1959).

The rule announced in either of those cases is not applicable here. The applicable rule was announced in Padgett v. Buxton-Smith Mercantile Co., 262 F.2d 39 (10th Cir. 1958) as follows:

"* * * Thus, we have said, in accordance with the modern trend, if the matter in dispute and to be decided involves causes and effects which are not within the knowledge or comprehension of the lay trier, expert testimony is admissible as an aid to the decisional process. And, it is not rendered inadmissible simply because it invades the province of the trier of the critical issue. Bratt v. Western Airlines, 10 Cir., 155 F.2d 850, 166 A.L.R. 1061; Nelson v. Brames, 10 Cir., 241 F.2d 256; Grayson v. Williams, 10 Cir., 256 F.2d 61; Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598; Millers National Ins. Co. v. Wichita Flour Mills Co., 10 Cir., 257 F.2d 93. It is only when the so-called expert testimony involves causes and effects readily within the knowl-

edge or comprehension of the fact triers that we have ruled it out as an usurpation of the judicial function. Nelson v. Brames, supra; Grayson v. Williams, supra."

■ The psychiatrist was not testifying as to defendant's credibility, but was giving his expert opinion as to the probability or likelihood of defendant admitting to a murder which he had not committed. His opinion did tend to discredit defendant's testimony. However, this is the tendency of all conflicting testimony upon any issue. The ultimate determination as to the credibility of witnesses and their testimony lies with the trier of the facts, and it was the jury which made this determination in this case, and not the psychiatrist or any other witness whose testimony was in conflict with that of defendant.

As to the commonly announced rule that a witness may not usurp the functions of the jury, or invade the jury's province, see VII, Wigmore on Evidence § 1920 (3d Ed. 1940), wherein the author points out the lack of reason for this rule of exclusion. See also 2 Gard, Jones on Evidence, Civil and Criminal § 14.28 (Sixth Ed. 1972); Rule 704, Rules of Evidence for the United States Courts and Magistrates, effective July 1, 1973; Rule 56(4), Uniform Rules of Evidence, National Conference of Commissioners on Uniform State Laws (1953); proposed Rule 704, New Mexico Rules of Evidence, to become effective July 1, 1973, which is identical with Federal Rule 704 and which provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

It follows from the foregoing that the judgment of conviction and sentence should be affirmed.

It is so ordered.

McMANUS, C. J., and MONTOYA, J., concur.