801 P.2d 675

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jeffrey FLANAGAN,
Defendant–Appellant.**

**No. 11247.**

Court of Appeals of New Mexico.

Oct. 18, 1990.

Certiorari Denied Nov. 26, 1990.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals his conviction for homicide by vehicle. The docketing state-

ment raised eight issues. Defendant has briefed five issues. Issues not briefed on appeal are deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App. 1985). The following issues were raised on appeal: (1) whether the prosecutor impermissibly introduced evidence of insurance in violation of SCRA 1986, 11–411; (2) whether the trial court erred in allowing the prosecutor to cross-examine defendant with questions that seemingly required defendant to comment on the veracity of the state's witnesses; (3) whether the prosecutor intentionally introduced evidence of defendant's prior bad acts; (4) whether the prosecutor deprived defendant of a fair trial during closing argument; and (5) whether reversal is appropriate under a cumulative error argument. We affirm.

## BACKGROUND

On August 18, 1987, defendant was driving his vehicle north on Fourth Street in Albuquerque, New Mexico. Prior to this time, he had replaced the engine in the vehicle. As he left the intersection of Claremont and Fourth Street, his vehicle rapidly accelerated and hit the left rear side of a pickup truck driven by Clyde Vigil. The pickup went out of control and rolled over several times. Mr. Vigil died four days later from the resulting injuries.

The state contends that defendant was reckless in the operation of his vehicle. Defendant alleged that, at the time of the accident, he was driving between 35–40 mph when he accelerated to pass another vehicle. The other vehicle also accelerated, so defendant took his foot off the gas pedal to allow the vehicle to pass. After doing so, his vehicle malfunctioned and continued to accelerate. At trial, it was uncontested that defendant's vehicle gained speed as it travelled down Fourth Street. There was significant difference in the testimony of the state's witnesses concerning the speed of defendant's vehicle. The estimates ranged from 50 mph to 60–70 mph.

## 1. LIABILITY INSURANCE

Defendant first contends he was denied a fair trial when the prosecutor impermissibly introduced evidence of defendant's status as an insured driver. He characterizes the prosecution's conduct as the intentional interjection of improper evidence in violation of Rule 11–411, and argues that an admonition to the jury to disregard the evidence would have been ineffective to remove the prejudice, citing *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966).

Because this case arose out of an automobile accident, it is not unusual that it involved an investigation by an insurance company. *See* NMSA 1978, § 66–5–205 (Repl.Pamp.1989). Insurance was mentioned during the opening statement without objection and again during the examination of the first insurance witness. Defendant did not object to the mention of insurance until the very end of this witness's testimony. His objection mainly concerned privilege. Defendant at that point moved for a mistrial based on the mention of insurance. Defendant did not ask to have the jury admonished that insurance was irrelevant to the issues on trial.

Motions for mistrial are directed to the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *State v. Simonson*, 100 N.M. 297, 669 P.2d 1092 (1983). An abuse of discretion occurs when the ruling of the court is clearly against the logic and effect of the facts and circumstances or the reasonable, probable, and actual deductions to be drawn from the facts and circumstances. *Id.*

The general rule in New Mexico is that error in the admission of evidence is cured by striking the evidence and admonishing the jury to disregard it. *Id.* In a civil case, this court has previously held that the prejudicial effect of a reference to insurance during opening statements was cured by the prompt admonishment of the trial court. *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.1976). Also in the context of civil cases, the trial court was held not to have abused its discretion in denying a motion for mistrial based on a witness's unsolicited reference to insurance when the defendant did not ask to have the jury instructed that insurance had no bear-

ing on the issue. *Cardoza v. Town of Silver City*, 96 N.M. 130, 628 P.2d 1126 (Ct.App.1981).

In civil cases, the mention of insurance is more prejudicial because it implies to the jury the availability of a "deep pocket." In criminal cases, however, particularly in light of the law requiring financial responsibility, § 66–5–205, the prejudice flowing from the mention of insurance is speculative at best. Because defendant did not ask for a prompt admonition, and because the possibility of prejudice was highly speculative, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## 2. COMMENTS ON VERACITY

■ Defendant contends that the trial court erred in allowing the prosecutor to cross-examine him with questions that required him to comment on the veracity of the state's witnesses. This is a case in which a number of different witnesses to an automobile accident testified to different views of the accident and the subsequent investigation. There were three potential areas of difference. First, defendant's testimony appeared to differ from the testimony of the witness in the car behind him as to when the witness was behind him and when defendant accelerated. Second, defendant's testimony appeared to differ from that of a police officer as to whether the officer inspected the accelerator. Third, defendant's testimony appeared to differ from other witnesses as to how fast defendant was driving.

In her cross-examination of defendant, the prosecutor stated that one witness, Michael Johnson, testified that when he pulled onto Fourth Street that he was right behind defendant, adding "and you say that [testimony] was incorrect?" Second, the prosecutor stated that the policeman testified that he checked the accelerator, and then the prosecutor asked, "Are you saying that he did not do that?" And last, the prosecutor asked if the three eyewitnesses who testified "are all mistaken about the speed that you were going?" When the prosecutor started this line of questioning, the public defender objected that it was improper for a witness to comment on the testimony of another witness. The prosecutor argued that she was simply asking defendant to explain the discrepancies. The court allowed all three questions and overruled defendant's objection to the line of questioning.

The prosecutor's questions gave defendant an opportunity to suggest that his testimony was not inconsistent with that of the other witnesses. For example, the prosecutor's questions concerning the accelerator allowed defendant to explain the difference between the gas pedal, which the police officer inspected, and the return spring and the throttle linkage, which defendant claimed were defective. The prosecutor's questions concerning speed allowed defendant to explain that there was a difference between his speed as he turned the corner and his speed at the time of the accident.

In *State v. Martinez*, 34 N.M. 112, 278 P. 210 (1929), our supreme court held that asking one witness whether another witness was mistaken was improper questioning. The court affirmed the district court's ruling that the following question was improper: " 'Now if Juan says that he ran clear across the bridge and met you about three steps on the other side of the bridge, and that right then the second shot was fired, Juan is mistaken, isn't he?' " *Id.* at 114, 278 P. at 211. The state argues that the subsequent adoption of the rules of evidence has abrogated the rule in *Martinez*. It points to SCRA 1986, 11–704, which permits opinion testimony, and to *State v. Lopez*, 84 N.M. 805, 508 P.2d 1292 (1973), where the supreme court rejected the objection that the evidence might invade the province of the jury.

One might question the continuing validity of the holding in *Martinez*, because the decision rested, at least in part, on the proposition that "[i]t is not proper to ask the opinion of one witness as to the credibility of another witness." *Id.*, 34 N.M. at 114, 278 P. at 211. Several decades after *Martinez* our supreme court adopted SCRA 1986, 11–608, which permits a wit-

ness to express an opinion as to the credibility of another witness (subject, of course, to the requirement that the witness expressing an opinion has a sufficient basis for the opinion). Nevertheless, the holding in *Martinez* remains sound, particularly when applied to cross-examination of a defendant in a criminal case. Asking a defendant if a witness for the state is "mistaken" too easily lends itself to abuse. Such questioning may amount to simply argument to the jury, in which the prosecutor improperly suggests that the only possible alternatives are that either the defendant or the witness is a liar. *See Commonwealth v. Long,* 17 Mass.App. 707, 462 N.E.2d 330 (1984).

Other jurisdictions support the proposition that questions that require a witness to comment on the veracity or credibility of the trial testimony of other witnesses, particularly law enforcement officers, may be improper. *See, e.g., United States v. Richter,* 826 F.2d 206 (2d Cir.1987); *Commonwealth v. Ward,* 15 Mass.App. 400, 446 N.E.2d 89 (1983). One rationale behind this rule is that it is the role of the jury to determine the credibility of witnesses. *State v. Martinez; United States v. Richter; Commonwealth v. Ward.* Whether the defendant believes the other witnesses were truthful or lying is simply irrelevant. *See Commonwealth v. Ward; People v. Crossman,* 69 A.D.2d 887, 415 N.Y.S.2d 470 (1979). In addition, such questions can constitute in effect a misleading argument to the jury that the only alternatives are that the defendant or the witnesses are liars. *Commonwealth v. Long.* Courts have held that even though a prosecutor does not expressly ask a defendant to characterize the state's witnesses' testimonies as true or false, it may nonetheless be error to tempt a defendant to do so. *Commonwealth v. Long.*

■ At the same time, however, we do not mean to suggest that it is improper for the prosecutor to engage in good-faith attempts (1) to clarify a defendant's testimony on cross-examination by inquiring about apparent inconsistencies with testimony of another witness, or (2) to determine if the defendant (as in this case) has an explanation for apparent discrepancies between the testimony of the witness and the testimony of the defendant. In general, we will leave it to the discretion of the trial court as to whether cross-examination of the defendant has crossed the line into improper argument.

■ We will, however, impose a strict prohibition upon asking the defendant if another witness is "mistaken" or "lying." This result may be required by *Martinez* itself. *See Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973). Objection to such questions should be sustained. Any legitimate purpose in the question can be served by a rephrased question posing less of a risk of improper prejudice. The state argues that while questions which are aimed at eliciting a reponse regarding the veracity of another witness's trial testimony are deemed improper, the prosecutor in this case was asking questions which went to the perception of the other witnesses. Questions asking whether another witness was mistaken do not necessarily evoke a response regarding the veracity of a witness. *See Bass v. Washington Kinney Co.,* 119 Ill.App.3d 713, 75 Ill.Dec. 295, 457 N.E.2d 85 (1983). There is, however, a fine line between mistake and untruthfulness. In asking whether other witnesses were mistaken, the impression communicated to the jury may be that either the witness or the defendant is lying. *Commonwealth v. Long.* This is especially true in a criminal case where the defendant is forced to characterize numerous witnesses, including police officers, as "incorrect" or "mistaken" in order for his or her testimony to be credible.

■ Applying these principles to this case, it was within the trial court's discretion to overrule or sustain the objections to the first two questions. The third question, however, was improper and the objection should have been sustained. Nevertheless, we hold the error to be harmless. The dangers that can arise from such a question did not materialize in this case. The prosecutor's questions did not amount to a jury argument, and defendant was not

being coaxed into accusing any other witnesses of lying. On the contrary, defendant provided an explanation for the critical discrepancies suggested by the prosecutor.

Under these circumstances, we are not persuaded that the improper question prejudiced defendant. In the absence of prejudice, error is not reversible. *State v. Wright*, 84 N.M. 3, 498 P.2d 695 (Ct.App. 1972); *cf. People v. Montgomery*, 103 A.D.2d 622, 481 N.Y.S.2d 532 (1984) (Per Curiam) (where prosecutor pursued cross-examination until defendant agreed each officer was lying, prosecutor's conduct raised serious ethical concerns, but in view of evidence of guilt, harmless error analysis was appropriate).

## 3. PRIOR BAD ACTS

■ Defendant contends that reversible error was present because the prosecutor intentionally introduced evidence of his prior bad acts in the form of previous accidents. Although defendant did not object to the specific testimony about which he complains on appeal, he argues that the error was preserved because defendant had previously objected to evidence concerning his driving record and had asked for a continuing objection, which the judge did not grant. Instead, he expressed his uncertainty about the issue defendant was trying to raise, saying, "Wait a minute. Wait a minute. We are not in common focus here." The last thing the judge said was, "Well, just take it one step at a time," to which defense counsel responded, "All right." In light of the court's expression of uncertainty about the issue and the final specific instruction to take it one step at a time, we can only interpret the colloquy as denying the continuing objection and requiring defendant to make specific objections to each question he did not want answered.

■ This is in accordance with the general rule. In order to preserve an issue for appeal, defendant must make a timely, specific objection. *State v. Lucero*, 104 N.M. 587, 725 P.2d 266 (Ct.App.1986). The purpose of this requirement is to apprise the

trial court of the nature of the error and invoke an intelligent ruling on the issue. *State v. Lopez.* Under the circumstances of this case, defendant's objection during his own testimony was not sufficient to alert the trial court that there was an issue concerning erroneous admission of evidence during his father's testimony. We do not believe that admission of the evidence constituted plain or fundamental error.

## 4. CLOSING ARGUMENT

■ Defendant contends that the prosecutor's closing argument deprived him of a fair trial. The portion of the argument to which defendant now objects occurred during rebuttal. Defendant contends the prosecutor intentionally misled the jury in suggesting that defendant used the time before he was questioned by Officer Salas to think up a story about his accelerator sticking. Defendant argues that, in fact, defendant made the same statement to an officer earlier. However, there was no objection to this portion of the closing argument, and the record does not indicate the substance of the conversation between the first officer and defendant. In addition to the cases previously discussed concerning preservation of error, *State v. Riggsbee*, 85 N.M. 668, 515 P.2d 964 (1973) and *State v. Carmona*, 84 N.M. 119, 500 P.2d 204 (Ct.App. 1972), indicate that this issue was not preserved. Further, the argument depends on facts not of record, and thus this court cannot review the issue. *See State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984).

## 5. CUMULATIVE ERROR

■ Anticipating our ruling on the preservation of his issues, defendant finally argues that this court can consider incidents that were not preserved below under a cumulative error argument. *See State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (Ct.App. 1974). We are not persuaded by this argument. The cases that have reversed convictions on this basis have generally involved much more egregious misconduct by prosecutors with overtones of bad faith. In *Vallejos*, the misconduct that formed

the basis for reversal consisted of introducing inflammatory physical evidence not connected to the defendants, referring to the mugging of a senator that had nothing to do with the case, and arguing the prosecutor's personal belief in defendant's guilt. Similarly, in *State v. Diaz*, 100 N.M. 210, 668 P.2d 326 (Ct.App.1983), the prosecutor extensively referred to his authority as prosecutor; repeatedly referred to the defendant as a "yo yo," stupid, a thief, and a crook; incorrectly stated the law concerning the defense of intoxication; and otherwise belittled the defense.

In this case, the alleged misconduct on the part of the prosecutor is not nearly as serious. Viewing the trial as a whole, we do not believe the record compels a finding that the prosecutor deliberately introduced evidence she knew or should have known was inadmissible, or otherwise abused her authority. We have considered the fact that one question the prosecutor asked on cross-examination was improper, but we conclude that, on balance, the doctrine of cumulative error is not applicable.

6. CONCLUSION

The judgment and sentence are affirmed. IT IS SO ORDERED.

MINZNER and HARTZ, JJ., concur.