[No. 2124, April 3, 1918.]
# STATE v. BALLES.

### SYLLABUS BY THE COURT.

1.  The word "district," as used in section 14, art. 2, state Constitution, is descriptive of the territory which in legal contemplation comprises the visne over which the jurisdiction of the court for the purpose of prosecutions for crimes and misdemeanors extends.                                    P. 17

2.  Where the venue in a criminal case is changed at the instance of the accused, he will not be heard to question its regularity, after selecting for himself the place of trial.
                                                            P. 20

3.  Alleged remarks of the trial court supposed to have been made to the jury in another case will not be considered when the same has not been authenticated by having been made a part of the record by bill of exceptions or otherwise.
                                                            P. 22

4.  Where there is substantial evidence to support the vedict of a jury, the same will not be disturbed on appeal.
                                                            P. 22

Appeal from District Court, Bernalillo County; Raynolds, Judge.

Domingo Balles was convicted of burglary, and he appeals. Affirmed.

O. A. LARRAZOLO, of Las Vegas, for appellant.

C. A. HATCH, Assistant Attorney General, for the State.

### OPINION OF THE COURT.

PARKER, J.   The appellant, Domingo Balles, was indicted for burglary in the district court for the county of Valencia. He was found guilty of that crime in the district court for the county of Bernalillo, and has perfected this appeal.

The evidence on the part of the state tended to disclose that the appellant and two companions went to the home

of Romalo Romero in the early evening and brutally assaulted him. They tied him hand and foot, placed a rope. around his neck, choked him, stuck him with a dagger, threatened his life by hanging him, and committed other brutal and cruel acts upon him and his wife, for the purpose of obtaining possession of a considerable sum of money which Romero was supposed to have concealed in his home. These facts were not disputed; the appellant's defense consisting of an alibi.

[1] The appellant in the district court for Valencia county filed a motion for a change of venue. The motion was supported by affidavits. Before the same came on to be heard, the district attorney for the Seventh judicial district, Valencia county being one of the counties within that district, and counsel for the appellant entered into a written stipulation, by the terms of which it was agreed that this cause be tried in the district court of the Second judicial district, sitting in and for the county of Bernalillo, the stipulation reciting, among other things, the following:

"* * * It being agreed between said respective counsel that it would be inconvenient and inexpedient to send said causes to either of the two remaining counties of the Seventh judicial district, they have therefore agreed that, if the judge shall consent, which they respectfully request him to do, the venue in all of said causes may be changed to the county of Bernalillo on the filing of this agreement and the consent of the judge."

Thereupon the venue of this cause was changed from Valencia county, in the Seventh ·judicial district, to Bernalillo county, in the Second judicial district. Trial was had in the latter county, without any objection whatever on the part of the appellant as to the right of that court to hear and determine the case until after · verdict was returned finding appellant guilty. A motion in arrest of judgment was then made, wherein it was contended that the court trying the case was without jurisdiction, and that is the first question presented here. The appellant contends that the territorial jurisdiction

of the several district courts of the state is defined by the constitution, and that section 14 of article 2 of the state Constitution confers on accused persons the absolute right to a trial in the jurisdiction wherein the crime is alleged to have occurred. It is also argued by appellant's counsel that the fact that appellant consented to be tried in a court in another district is immaterial, because jurisdiction cannot be conferred by consent. Reference is also made to sections 5570 and 5575, Code 1915, the first providing, in effect, that all criminal offenses shall be tried in the county in which they were committed, the second providing that, where change of venue is granted upon grounds other than those relating to the judge, the case shall be removed to some other county free from exception within the same judicial district.

While there is some conflict of authority as to the doctrines we shall announce under this first proposition, an examination of the cases convinces the court that the word ''district'' in section 14 of article 2 of the state constitution does not mean ''judicial district,'' but simply means territory over which a court may have jurisdiction; that the right of a jury trial, as granted therein, constitutes a right or privilege which, in so far as the place of trial is concerned, may be waived by an accused person in a number of ways, and that, when he goes to trial in another judicial district, without objection on his part, he has waived the privilege, and cannot be heard to say that the court trying him was without jurisdiction. Thus in State v. Miller, 15 Minn. 344 (Gil. 277), the place of trial was changed from one county in one district to a county in a different district at the request of the state. The constitutional provision involved was the same as ours; the word district being used. The court followed State v. Gut, 13 Minn. 343 (Gil. 315), holding that the Constitution was not violated by trial in another district; ''district'' being held to mean ''trial district.'' The most satisfactory case on the subject is that of Weyrich v. People, 89 Ill. 90. The court said:

State v. Balles, 24 N. M. 16.

"It is argued on behalf of plaintiff in error that the venue should have been changed either to Peoria, Marshall, Stark, or Putnam counties, which are in the same judicial circuit with Tazewell, and that changing to Logan county, which is in a different judicial circuit, was in violation of section 9, art. 2, of the Constitution, which provides that 'in all criminal prosecutions the accused shall have the right'to * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.' The objection is, in our opinion, based upon a misapprehension of the meaning of the word 'district' as here used. The plain object of this clause of the Constitution is to secure to the defendant the common-law right of trial by a jury of the visne or neighborhood where the offense is alleged to have been committed, and to protect him against prosecution elsewhere. * * * A party is no more subject to be indicted and tried for the alleged commission of an offense in a different county in the same circuit than in a county in a different circuit. The creation of judicial circuits has not the slightest reference to the enforcement of this clause of the Constitution, but is solely for convenience in providing the requisite judicial force to administer the law throughout the state, The word 'district' is convertible with that of 'county,' and is descriptive of the territory which, in legal contemplation, comprises the visne over which the jurisdiction of the court for the purpose of prosecution for the commission of crimes and misdemeanors extends; and, although there may be many counties or districts in the same circuit, the court in each is entirely separate and disconnected from that in all of the others, and its jurisdiction, within the meaning of the clause under consideration, is limited by its territorial boundaries."

In Olive v. State, 11 Neb. 1, 7 N. W. 444, the court said:

"In its ordinary meaning the word 'district' is commonly and properly used to designate any one of the various divisions or subdivisions in which the state is divided for political or other purposes, and may refer either to a congressional, judicial, senatorial, representative, school, or road district, depending always upon the connection in which it is used. In the clause quoted very clearly it refers to neither of these, and, although not synonymous with the word 'county,' yet, by its connection with it, the intention evidently was that they should be taken in a similar sense, and as designating the precise portion of territory or division of the state over which a court, at any particular sitting, may exercise power in criminal matters. And such division, by whatsoever name it may be known in legislation, is coextensive with and practically limited by this constitutional

provision to that from which a jury  *  *  *  may legally be drawn. And this is in entire accord with our constitutional system of district courts, by which one is designed for each organized county, having criminal jurisdiction coextensive therewith, and assisted by jurors drawn in the manner now provided by law from the whole body of the people thereof.''

To the same effect is State v. Knapp, 40 Kan. 148, 19 Pac. 728; In re Nelson, 19 S. D. 214, 102 N. W. 885, 887; State v. Stewart, 60 Wis. 587, 19 N. W. 429, 50 Am. Rep. 388, 394.

We agree with those courts holding that the word ''district'' cannot be considered as superfluous, and that, being used in conjunction with the word ''county,'' it means trial district. In this state trial districts of our district courts embrace the territory within a county only, and until a different division is made the clause in question only means that the accused shall be tried by a jury of the county wherein the offense is alleged to have been committed, and does not mean that an accused has any particular right to a trial by a jury from the judicial district wherein the crime was committed. Consequently the appellant was not vested with any right other than that of being tried by a jury from the county wherein the offense was alleged to have been committed, and, a fair and impartial jury not being procurable there, so far as the Constitution is concerned, he might be tried in some other county free from exception.

[2] This would dispose of appellant's contention were it not for the fact that section 5575, Code 1915, provides that, where change of venue is granted upon grounds other than those relating to the judge, the cause shall be removed to some county free from exception within the same judicial district; whenever the change is granted upon any ground relating to the judge, the case shall be removed to the next nearest district or some county thereof. The record in the case at bar indicates that the change of venue was granted upon the grounds that a fair trial could not be had on account of the prejudice of the inhabitants of the county and for

the convenience of all concerned. Because the change was not made on account of any disqualification of the judge of the Seventh judicial district, the cause should have been removed under the statute to some county in that district, rather than to a county in a different district. But appellant is in no position to urge that matter with success here; he having prevailed upon the trial court to take the action, and having made no objection thereto until after verdict. In Lightfoot v. Commonwealth, 80 Ky. 516, it was held that after a party accused of crime had selected his place of trial he could not be heard to complain, even though the place of trial was in a county not specified by statute. The court said:

"By the statute the change of venue shall be to some adjacent county, if objections are not taken and sustained to all the adjoining counties; and, if so, the change to be made to the nearest county to which there is no valid objection. While the defense might object to the removal of the cause in any other manner than that provided by the statute, we perceive no objection to the jurisdiction of the court to try the case in a county selected by the defense, and to which the attorney for the commonwealth consents. This class of cases is embraced within the jurisdiction of the circuit court. The judge of the district, upon hearing the objections pro and con, * * * can determine, from all the proof before him, to which of the adjacent counties the case is to be sent, and whether the objections to these counties, if made, are sufficient to send it to some other adjacent county, and surely, when the accused desires to be tried in a particular county in the district, and no objection is made by the attorney for the state, there can be no question made as to the jurisdiction. The affidavits showing the necessity for a change of venue are not jurisdictional facts, and where a change of venue is granted, and the accused submits himself to the jurisdiction of the court to which it is sent, that is, goes into a trial without any objection, in either the court in which the indictment was found or the court to which the venue was changed, it is too late, after verdict, to raise the question for the first time. * * * Consent cannot give jurisdiction; but the purpose of the statute being to secure an impartial trial, and authorizing a removal of the cause by the accused from the vicinage, the spirit, if not the letter, of the statute will sustain a verdict of guilty or of an acquittal, where the accused selects the county in which he is to be tried, although it may not be in a county adjacent to that in which the offense was committed."

In Territory v. Taylor, 11 N. M. 588, 596, 71 Pac. 489, 491, the court said:

> "It comes with poor grace from the one who secured the change of venue to now assert that the court to which the change was granted at his request had no power to try the case. The district courts both of Chavez and Eddy counties are courts of general jurisdiction; they are in the same judicial district, and are presided over by the same judge; besides, independent of the statute allowing a change of venue, it is the rule that one 'who has applied for and obtained a change of venue cannot question the regularity of the proceedings.' 4 Enc. P. & P. 489."

To the same general effect are Oborn v. State, 143 Wis. 249, 126 N. W. 737, 741, 31 L. R. A, (N. S.) 966; State v. Pancoast, 5 N. D. 516, 67 N. W. 1052, 1054, 35 L. R. A. 518; Hourigan v. Commonwealth, 94 Ky. 520, 23 S. W. 355. A case to the contrary, which practically stands alone on the subject, is Taylor v. State (Tex.) 197 S. W. 196.

[3] Attached to the motion for a new trial appears a statement supposed to have been made by the district judge to the jury in the trial of the case of State v. John O. Peck, and appellant contends that the statement reproached the 12 jurors in that case for their failure to find Peck guilty of the crime for which he was then being tried, and that such statement must have had its effect upon the minds of the jury in this case. The statement is in no manner authenticated as the record in this case; it is simply contained in appellant's motion for a new trial. We have no way of ascertaining whether it is true or not. It should have been settled as a part of the bills of exceptions. Nor is it shown that any of the jurors who sat in the case at bar were in the court-room or had even been impaneled when the remarks were supposed to have been delivered by the court, or that they ever had any knowledge thereof. Under such circumstances we shall not further consider the assignment.

[4] The last assignment constitutes an attack upon the sufficiency of the evidence. There is an abundance

of substantial evidence to support the verdict, and consequently the same will not be disturbed on appeal.

For the reasons stated, the judgment of the trial court will be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.