444 P.2d 961

Diane SMITH, Petitioner-Appellant,

v.

STATE of New Mexico, Defendant-Appellee.

No. 8581.

Supreme Court of New Mexico.

Sept. 9, 1968.

Rudy S. Apodaca, Las Cruces, for appellant.

Boston E. Witt, Atty. Gen., Gary O'Dowd, Spencer T. King, Paul Lacy, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

MOISE, Justice.

This is an appeal from a denial of relief sought under Rule 93 (§ 21–1–1(93), N.M. S.A.1953). Appellant was convicted of murder in the first degree. Following conviction, she was sentenced to life imprisonment pursuant to a stipulation between her counsel and the district attorney which was read to the jury, wherein it was agreed that the death penalty would not be sought and that in the event of conviction of murder in the first degree the maximum sentence would be life imprisonment. No appeal was taken from the sentence imposed.

By her motion appellant asserts, generally, denial of her rights under the Constitutions of the United States and the State of New Mexico, without specifying which Articles are claimed to be violated. From her brief, it is apparent that her principal claim is to the effect she was denied due process of law by virtue of the stipulation whereby the jury was deprived of their statutory duty to fix the sentence as provided in § 40A–29–2, N.M.S.A.1953, which reads:

"When a defendant has been convicted of a capital felony the judge shall sentence that person to death, unless the jury trying such case shall recommend life imprisonment, then the judge shall sentence that person to life imprisonment; provided that in cases wherein the defendant has entered a plea of guilty to the commission of a capital felony, the court may in lieu of sentencing such person to death, sentence the defendant to life imprisonment."

Appellant argues that this statute places on the jury the dual responsibility of determining guilt or innocence and fixing the penalty for first degree murder, and that there may be no waiver of the jury's right and duty concerning the penalty. Our attention is directed to State v. Nelson, 65 N.M. 403, 338 P.2d 301 (1959), cert. denied, 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed.2d 115, wherein we held that § 40–24–10, N.M.S.A. 1953, since repealed and replaced by § 40A–29–2, supra, placed such a two-fold duty on the jury. It was not there determined if a stipulation such as was here entered into would be proper. Also, we note the difference between § 40A–29–2, supra, now in effect, and § 40–24–10, supra, applicable when Nelson, supra, was decided. However, we do not consider the nature or effect of these changes but proceed on the assumption that the law as stated in Nelson, supra, continues unchanged.

Appellant's principal reliance is placed on the reasoning and authority of State v. Christensen, 166 Kan. 152, 199 P.2d 475 (1948), which is the only case passing directly on the issue, although involving a somewhat differently worded statute. This was an appeal from a sentence imposed following conviction in a case where the death penalty had been waived by stipulation, as was done here. The court reversed the conviction holding the statute which provided that "if there is a jury trial the jury shall determine which punishment (death or confinement and hard labor for life) shall be inflicted" was to be literally applied, and that "no stipulation of the parties or consent thereto by the court can change the statute or affect its applica-

bility." It is further stated that under the statute there being considered,

"It is the jury and the jury alone which can determine the penalty, regardless of the attitude of counsel or court. That being the law, it becomes the clear duty of the trial court to so advise the jury and to submit for its determination the question of penalty in the event a verdict of murder in the first degree is returned."

The court there indicated that the authorities "overwhelmingly support the conclusion" that it was reversible error to have proceeded as was done there, and a new trial was granted. We are not aware of any cases to the contrary.

■■ We are not called upon, however, to consider the correctness of the reasoning or result in that case. This is not an appeal from the conviction, but rather is a collateral attack thereon under our Rule 93 procedure. We have held that Rule 93, supra, does not provide a substitute for appeal. State v. Williams, 78 N.M. 431, 432 P.2d 396 (1967). It is a post-conviction remedy, civil in nature, substantially equivalent to habeas corpus, State v. Weddle, 77 N.M. 420, 423 P.2d 611 (1967); United States v. Anselmi, 207 F.2d 312 (3rd Cir. 1953), cert. denied, 347 U.S. 902, 74 S.Ct. 430, 98 L.Ed. 1061, and an issue not properly cognizable in a habeas corpus proceeding cannot furnish basis for relief under Rule 93. See State v. Ramirez, 78 N.M. 418, 432 P.2d 262 (1967).

It appears that after the reversal and remand in State v. Christensen, supra, while the defendant was being held in jail awaiting re-trial, she sought habeas corpus asserting that she had been placed in jeopardy in the first trial and since the reversal was not because of any claims advanced by her, to try her again would amount to double jeopardy. In Application of Christensen, 166 Kan. 671, 203 P.2d 258 (1949), it was held that the adoption of the stipulation whereby the question of the penalty to be inflicted in the event defendant was found guilty of first degree murder amounted to a trial error only and, accordingly, by appealing and seeking a new trial defendant had waived any claim based on prior jeopardy, and was not entitled to be released on habeas corpus.

■ Applying the same reasoning here and assuming, without deciding, that it was error to proceed as was done, we are led to the conclusion that Rule 93 is not a proper device to obtain a review of what may have been a trial error. It is clear that Kansas, relied on by appellant, holds it was nothing more. It must follow that even though the question of the claimed error could have been raised on appeal and a decision obtained, appellant cannot succeed here through collateral attack. State v. Selgado, 78 N.M. 165, 429 P.2d 363 (1967).

■ Moreover, the trial court found that the stipulation wherein it was agreed that the jury should not be permitted to return a verdict calling for the death penalty was entered into by counsel for defendant as a part of the trial strategy and should not be made the basis for relief under Rule 93. With this we agree. Compare State v. Selgado, supra. In our view, appellant has had the benefit of possible acquittal, or conviction of a lesser degree of homicide, without risking the death penalty. We see no deprivation of any constitutionally guaranteed right, nor do we see any prejudice in appellant having been given a trial free from the risks incident to having the jury consider the possibility of imposing death as the penalty, in the event of a verdict of guilty of murder in the first degree. It may have been legally erroneous to have so proceeded, as held in Kansas, but appellant lost nothing thereby and should not now be heard to complain in this proceeding. Compare State v. Blackwell, 76 N.M. 445, 415 P.2d 563 (1966).

■ In Point II, appellant claims that the court erred in overruling her motion attacking an instruction given to the jury at the trial without objection. The particular instruction informed the jury that in the event a verdict of guilty was returned, the penalty would be assessed by

the judge, but it could recommend clemency and the recommendation would be considered. A petition recommending clemency, signed by eight jurors, was returned with the verdict. What we have said under Point I concerning errors in the trial which might require reversal on appeal not being available under Rule 93 applies to this point also. Likewise, what is said about trial tactics and prejudice is similarly pertinent. We think it in order at this point to quote from Adams v. United States, 95 U.S.App. D.C. 354, 222 F.2d 45 (1955), where error was claimed in the trial court's failure to grant relief under Section 2255 of Title 28 U.S.C.A. (1952) because of several claimed errors, including failure to give two instructions which had not been requested. The court, speaking through Circuit Judge Washington, said:

"None of these matters is within the scope of the collateral attack authorized by Section 2255. That section requires that a sentence be vacated when the court finds 'that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.' As the Fourth Circuit has said—

"'Prisoners adjudged guilty of crime should understand that 28 U.S.C.A. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. Questions as to the sufficiency of the evidence or involving errors either of law or of fact must be raised by timely appeal from the sentence if the petitioner desires to raise them. Only where the sentence is void or otherwise subject to collateral attack may the attack be made by motion under 28 U.S. C.A. § 2255, which was enacted to take the place of habeas corpus in such cases and was intended to confer no broader right of attack than might have been made in its absence by habeas corpus.'

Taylor v. United States, 4 Cir., 1949, 177 F.2d 194, 195."

■■■ Appellant would avoid the rule requiring timely objection to errors in instructions by her claim that fundamental error resulted from the instructions. She thus would seek the benefits of the law of "fundamental error" as announced by this court in State v. Garcia, 19 N.M. 414, 143 P. 1012 (1914), and invoked a number of times since. However, the rule there announced has no application here. As said in State v. Lucero, 70 N.M. 268, 272, 372 P.2d 837, 840 (1962):

"The doctrine of fundamental error has its place in this jurisdiction. State v. Garcia, 19 N.M. 414, 143 P. 1012, 1014. But the errors complained of must be such as go to the foundation of the case, and which deprive the defendant of rights essential to his defense. State v. Sena, 54 N.M. 213, 219 P.2d 287. The discretion residing in this court to apply the doctrine is not to be exercised in aid of strictly legal, technical or unsubstantial claims. Where substantial justice has been done, the parties must have taken and preserved exceptions in the lower court before this court will notice them on appeal. State v. Garcia, supra; State v. Smith, 51 N.M. 328, 184 P.2d 301."

See also, State v. Sanders, 54 N.M. 369, 225 P.2d 150 (1950); State v. Garcia, 46 N.M. 302, 128 P.2d 459 (1942). Compare State v. Sanchez, 58 N.M. 77, 265 P.2d 684 (1954).

■■■ Appellant next complains that the trial was a nullity because of an absence of jurisdiction since it was held in a federal court house wherein exclusive jurisdiction, except for the service of criminal or civil process, is by law vested in the United States. See Arledge v. Mabry, 52 N.M. 303, 197 P.2d 884 (1948). While appellee does not disagree that the rights of the federal government are as stated, it does not concede that the federal court house is outside the territorial limits of the State of New Mexico, or that a trial held therein is void.

As a matter of fact, it is pointed out that the very fact that process may be served on the federal premises demonstrates that the federal court house is within the state. See Ft. Leavenworth RR. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885). Similarly, we take note that the fact the Indian reservations, although not governed by the state, or controlled by its laws, are nevertheless a part of the state and residents thereon have certain rights by virtue of this fact. See Montoya v. Bolack, 70 N.M. 196, 372 P.2d 387 (1962); Note, "Land Under Exclusive Federal Jurisdiction: An Island Within a State," 58 Yale L.J. 1402 (1949); Note, "Federal Areas: The Confusion of a Jurisdictional-Geographical Dichotomy," 101 U.Pa.L.Rev. 124 (1952).

As we view the problem, it is not one of jurisdiction over the federal court house property. If the murder had been committed on the court house grounds, this would be the issue. See Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991 (1892); United States ex rel. Bowen v. Johnston, 58 F.Supp. 208 (N.D.Cal.1944), affirmed, 146 F.2d 268 (9th Cir. 1944), cert. denied, 324 U.S. 876, 65 S.Ct. 1012, 89 L.Ed. 1428.

In Brown v. State, 219 Ind. 251, 37 N.E. 2d 73, 137 A.L.R. 679 (1941), concerning "venue" as distinguished from "jurisdiction," the court said the following:

"In speaking of the venue of an action or the place of trial, courts often speak of the jurisdiction of the court to try the case. In so using the word 'jurisdiction' in connection with the matter of place of trial or venue the courts are speaking of the jurisdiction of the particular case and not of the jurisdiction of the subject matter. 'The word "venue," unless it is given jurisdictional effect by localizing the action, relates only to the place where or the territory within which either party may require the case to be tried, and unless it is a localized action, the question of jurisdiction of subject matter is not involved.' 21 C.J.S. Courts § 15, p. 33."

The offense appellant was charged with having committed allegedly occurred in Dona Ana County, New Mexico. The trial was before a jury of that county, and was presided over by the judge of the district in which the county is located. Appellant was denied none of the rights guaranteed her by Art. II, §§ 12 and 14, N.M.Const., unless she was thereby entitled to a trial within the county—assuming for the sake of argument that the jurisdiction vested in the federal government over the federal building created an island within the county.

The pertinent part of Art. II, § 12, reads:

"The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate."

Article II, § 14, states:

"In all criminal prosecutions, the accused shall have the right to * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

This court, in the early case of State v. Holloway, 19 N.M. 528, 146 P. 1066 (1914), 1915F·L.R.A. 922, considered at length the rights of an accused to trial in a particular county. It was there said:

"* * * we desire to make our position plain, it is our conclusion that by the common law an accused had the right to be tried in the county in which the offense was alleged to have been committed, where the witnesses were supposed to have been accessible, and where he might have the benefit of his good character if he had established one there, but if an impartial trial could not be had in such county it was the practice to change the venue upon application of the people to some other county where such trial could be obtained."

After reviewing decisions from many states, it was stated as the conclusion of the court that:

"* * * In all that we have had to say upon this subject we desire to be understood as holding that where a trial by an impartial jury can be secured in

the county where the crime is committed, the accused cannot be deprived of a trial there, even under the sanction of our legislation upon the subject of change of venue. This is necessarily so under our legislation as to the right to 'a speedy public trial by an *impartial* jury of the county,' if one be obtainable."

In the instant case, not only did appellant have a trial by an impartial jury of Dona Ana County, presided over by the district judge of that county, but had all of the rights referred to in the quotation from State v. Holloway, supra.

We have not overlooked the language of this court in Arledge v. Mabry, supra, to the effect that voting places on federally owned property wherein exclusive jurisdiction has been ceded are "outside the state territorially, within contemplation of law" so far as meeting the requirements of Art. VII, § 1, New Mexico Constitution, requiring voters to personally appear and cast their ballots in the precinct of their residence "in New Mexico." Also, we have noted the language in Chaney v. Chaney, 53 N.M. 66, 201 P.2d 782 (1949), where it is stated that land acquired by the United States through condemnation "is not deemed a part of the State of New Mexico" so that persons residing thereon did not meet the requirements of residence for divorce purposes.

While we fully appreciate that the language can be read literally so as to result in federal property located geographically within the state being determined as legally outside, we doubt that such an anomalous result was contemplated insofar as requiring a holding that a trial held in a federal court house in Las Cruces, in the center of Dona Ana County, within the external boundaries of the State of New Mexico, was not conducted "in the county." See discussion in Crownover v. Crownover, 58 N.M. 597, 274 P.2d 127 (1954), and in State v. Mimms, 43 N.M. 318, 92 P.2d 993 (1939), cert. denied, 308 U.S. 626, 60 S.Ct. 382, 84 L.Ed. 522, reh. denied, 309 U.S. 694, 60 S.Ct. 512, 84 L.Ed. 1035, which

would seem to dictate a conclusion different from that reached in Arledge, supra, and in Chaney, supra, under facts such as are here present.

We hold the federal court house where the trial took place was in Dona Ana County and that appellant's right to a trial "in the county" was met. To hold otherwise would certainly be exalting form over substance. In Crownover v. Crownover, supra, in passing on a statute giving our courts jurisdiction to grant divorces to persons in the military service and living on military bases located in New Mexico (§ 22–7–4, N.M.S.A.1953), it is stated that "the concept of exclusive jurisdiction of the United States over lands ceded by the states is a developing one as are all such concepts with their application to the increasing number of factual situations * * *."

We would add that when placed on trial, appellant voiced no objection to the place of trial. If she had any right to object to trial in the federal court house, she must certainly have waived it by remaining silent until after her conviction. In State v. Balles, 24 N.M. 16, 172 P. 196 (1918), it was stated that the right to jury trial as granted in Art. II, § 14, "constitutes a right or privilege which, insofar as the place of trial is concerned, may be waived by an accused person in a number of ways, and that, when he goes to trial in another judicial district, without objection on his part, he has waived the privilege, and cannot be heard to say that the court trying him was without jurisdiction." As already noted, if we assume the federal building is not within Dona Ana County, we see no reason why, under the facts here present, there was not an effective waiver of the right to trial in Dona Ana County.

Pertinent to the problem under discussion is the following which we copy from Brown v. State, supra:

"It will not be contended that a person accused of crime may not waive his right to a trial by jury, his right to be heard by himself and counsel, or his right to meet the witnesses face to face. He waives

his right to meet the witnesses face to face by taking their depositions to be read on the trial. Butler v. State, supra. He may waive his right to trial by jury and agree to trial by the court. Murphy v. State, supra. He may waive his right to be heard by himself and counsel. He may waive his right to a trial as to his guilt by pleading guilty. Yet all of these rights of the accused are guaranteed in the same words by the same section of the constitution as is his right to a trial in the county where the offense was committed. We can perceive no reason why this latter right may not also be waived by the accused."

See also, Annot., 137 A.L.R. 686, 687 (1942), where the following rule is found, and numerous cases, including State v. Balles, supra, are cited in support:

"The courts have uniformly taken the view that an accused's right as to place of trial, arising under a constitutional provision expressly granting or guaranteeing to persons accused of crime the right to be tried in, or by a jury of, the county or district in which the offense was committed or is alleged to have been committed, may be waived."

See also, People v. Baker, 231 Cal.App.2d 301, 41 Cal.Rptr. 696, 11 A.L.R.3d 1046 (1965); Morris v. State, 363 P.2d 377 (Okl. Cr.1961); State ex rel. Lea v. Brown, 166 Tenn. 669, 64 S.W.2d 841, 91 A.L.R. 1246 (1933), cert. denied, 292 U.S. 638, 54 S.Ct. 717, 78 L.Ed. 1491. Compare State v. Furstenau, 167 Neb. 439, 93 N.W.2d 384 (1958). Similarly, it has been held that where a prisoner pleads guilty without objecting to the venue of the court in federal criminal proceedings, an effective waiver of venue as provided in Art. III, § 2, United States Constitution, results, and defects, if any, cannot be raised in subsequent collateral habeas corpus proceedings. Mahaffey v. Hudspeth, 128 F.2d 940 (10th Cir. 1942), cert. denied, 317 U.S. 666, 63 S.Ct. 76, 87 L.Ed. 535. The same is true concerning waiver of rights guaranteed in the Sixth Amendment to the Constitution. See Levine v. United States, 182 F.2d 556 (8th Cir. 1950), cert. denied, 340 U.S. 921, 71 S.Ct. 352, 95 L.Ed. 665; United States v. Gallagher, 183 F.2d 342 (3rd Cir. 1950), cert. denied, 340 U.S. 913, 71 S.Ct. 283, 95 L.Ed. 659.

■ Appellant argues two additional points. In the first, an attack is made on certain of the trial court's findings as not being supported by substantial evidence. We have considered the findings and the proof in connection therewith and are satisfied that the evidence and reasonable inferences arising therefrom furnish substantial support. Nothing more is required. State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968); State v. Crouch, 75 N.M. 533, 407 P.2d 671 (1965).

We would add a word concerning appellant's argument that finding No. 6 somehow prejudiced her. The finding reads:

"The defense was not precluded from having asked for the death penalty had it desired any such result. And this Court finds it difficult to accept the contention (in effect, 'give me liberty or give me death') as being quite compatible with the obligation of defense counsel in otherwise minimizing the impact on his client—in furtherance of which 'minimizing,' the aforementioned Stipulation appeared to have been developed as part of trial strategy."

Our discussion of Point I, in our view, contains a complete answer contrary to appellant's position.

Finally, appellant argues that there was error in the action of the trial court in permitting the late filing of a counter praecipe by appellee. It is not necessary for us to consider the merits of this point because in our consideration of the appeal we have not noted or weighed any of the material incorporated in the transcript pursuant to the counter praecipe. These items consisted of objections to instructions and the closing arguments of one of the counsel for appellant. In ruling on the other points raised, our conclusions were reached without

reference to the materials assertedly incorporated erroneously.

Having considered each of appellant's points and having concluded that no error in the court's consideration of the motion filed under Rule 93 has been demonstrated, it follows that the judgment appealed from should be affirmed.

It is so ordered.

CHAVEZ, C. J., and NOBLE, COMPTON and CARMODY JJ., concur.