495 P.2d 1079

STATE of New Mexico, Plaintiff-Appellee,

v.

Juan VALDEZ, Defendant-Appellant.

No. 490.

Court of Appeals of New Mexico.

Jan. 21, 1972.

Rehearing Denied Feb. 16, 1972.

Certiorari Granted April 10, 1972.

Barry Rudolf, Santa Fe, for appellant.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

COWAN, Judge.

Defendant appeals from a judgment and sentence following his conviction of assault with intent to commit a violent felony, § 40A–3–3, N.M.S.A.1953 (Repl.Vol. 6), and false imprisonment, § 40A–4–3, N.M.S.A. 1953 (Repl.Vol. 6). Trial was in Bernalillo County on a change of venue.

We affirm.

The defendant was one of eleven persons against whom various charges were filed, arising out of a raid on the Rio Arriba County Courthouse on June 5, 1967. The matter was given extensive press coverage and there was a great deal of public excitement, high feeling and prejudice in the area.

After a venue hearing, the court entered findings of fact as follows:

"1. That there exists in the three counties of the First Judicial District, widespread and general local prejudice, knowledge, and public excitement concerning the subject matter of this case.

"2. That there are grounds for a reasonable apprehension, and it is probable, that the parties herein will not secure a trial in the First Judicial District by a fair and impartial jury, due to the widespread and general knowledge, prejudice, and public excitement and public involvment [sic] in the subject matter of this case.

"3. That by reason of the present existence of public excitement, sentiment, and impressions still in the minds of the people generally, and opinions formed and expressed, and the at large knowledge and publicity by word of mouth as well as the news media, the parties cannot receive a trial by a fair and impartial jury in the First Judicial District.

"4. That Bernalillo County is free from exception; and there is not such general and widespread knowledge and involvement and public excitement in connection with the subject matter of this case, as to prevent a fair and impartial trial there by jury, and the parties can receive a trial in Bernalillo County by a fair and impartial jury.

"5. That the county which has the most cosmopolitan population in the State of New Mexico and which from all points of view, is most likely to provide citizens and residents for jury service with minds open and free of preconceived notions as to the guilt or innocence of any of the defendants, and in which the parties to this cause, the State as well as all of the defendants, are the most certain to get a fair and impartial trial is the County of Bernalillo."

Based on these findings, the court concluded:

"1. That the venue herein should be changed from the First Judicial District,

for the reason that the parties herein cannot receive a trial by a fair and impartial jury in said judicial district.

"2. That none of the three counties of the First Judicial District is free from exception; and the County of Bernalillo is in a contiguous judicial district, and is free from exception."

An order was entered changing venue from all counties of the First Judicial District to the County of Bernalillo.

■ It is this change of venue which defendant first urges as error. For unexplained reasons, the record, while extensive, is not complete. There were various pleadings and motions which do not appear in the record but whose existence is established by dispositive action of the court. Such is true of various motions for changes of venue, including one in cause No. 4028, of which defendant now complains under his first point.

Hearing on the venue question was set for September 9, 1968. When court convened that morning, the attorneys for all the defendants were present and extended conversations were had between the court, defense counsel and the prosecution. The record is clear that there had been several motions for changes of venue by some of the defendants, although none by the defendant here, as well as by the state. The state's original motion for a change of venue did not include cause No. 4028. Most of the morning was taken up with a discussion of venue.

Recessing until 1:00 P.M., the court announced it would at that time proceed with hearing testimony on the venue question, stating its position as follows:

"I'll tell you what I'm going to do, gentlemen, in view of, they have changed their motion for Change of Venue now at this late hour when all the witnesses have been called for the purpose directed at the Motions, as the[y] existed as of 9:00 o'clock this morning. I am going to give the State the right to file whatever Motions or Affidavits they have concerning any change of venue

they may feel they want filed. Court will be in recess until 1:00 o'clock this afternoon. I think before the Court takes a recess I want the record to show that one of the reasons, this matter is being put off and not acted upon as it should be is because of these late changes that are being made by the defendants in the case. And that the State is not entirely to blame for the continuances in this case in asking for more time."

The defendant's objection to the venue hearing was couched in the following language:

"The defendants Juan Valdez * * * object to proceeding upon the amended Motion for Change of Venue filed by the State of New Mexico, in cases * * * and 4028 upon the grounds that, one: the District Attorney's Office has had many months to file a Motion for a Change of Venue with respect to Santa Fe County, and has not seen fit to do so, except within the last few minutes. And it is contrary to the Court's order that all Motions be filed by the 19th day of August. Number two: upon the grounds that the amended Motion was served upon counsel for all defendants herein, just within the last few minutes. And we are entitled to five days notice before appearing upon the Motion for Change of Venue."

Defendant's objections were directed to the state's amended motion, which included cause No. 4028, and are of a general nature although the grounds were specific. He made no claim of prejudice because of the time of the venue hearing. He made no claim that he was unprepared or that he was unable to produce witnesses. He made no claim of surprise nor did he ask for a continuance or postponement. He fully participated in the entire hearing. He does not attack the sufficiency of the evidence supporting the court's change of venue order. He has failed to show, in any particular, how the claimed errors surrounding the hearing on the change of venue constituted a denial of due process. Hanson v.

State, 79 N.M. 11, 439 P.2d 228 (1968). In his brief, defendant further argues a constitutional right to be tried in the county of the offense, lack of affidavit under the change of venue statute and lack of timely filing. Section 21–5–3, N.M.S.A.1953 (Repl.Vol. 4). None of these were raised in the trial court; however, the previous discussion hereinabove disposes of them.

■ Although the foregoing very well disposes of defendant's first point, we believe the inherent power of the court to be even more decisive. Under the facts of the incident out of which the charges against the defendant arose, with the attendant publicity and the fear, unrest and prejudice of the citizens of Rio Arriba and surrounding counties, the trial court's inherent power permitted it to order a change of venue on its own motion.

■ The right to trial by an impartial jury is a right extending to the public, represented by the state, as well as the criminally accused. State v. Archer, 32 N.M. 319, 255 P. 396 (1927). In State v. Holloway, 19 N.M. 528, 146 P. 1066 (1914), our Supreme Court said:

"As indicated by this opinion thus far, we agree with those courts which have held that an exception to the general rule [that the accused has a right to trial by an impartial jury in the district in which the offense was alleged to have been committed] must be made when an impartial jury cannot be obtained, assuming that statutory authority for a change of venue exists, and that this was the true rule of the common law.

"While of this opinion we desire to make our position plain, it is our conclusion that by the common law an accused had the right to be tried in the county in which the offense was alleged to have been committed, where the witnesses were supposed to have been accessible, and where he might have the benefit of his good character if he had established one there, but, if an impartial trial could not be had in such county, it was the practice to change the venue upon

application of the people to some other county where such trial could be obtained."

While *Holloway* did not answer the question of a trial court's inherent power to change venue, it did answer the question of whether the adoption of our constitution modified or reduced the court's common law power to order a change of venue. The court stated:

"'* * * Our duty in this case is therefore to ascertain whether it was the understanding of the framers of the constitution, and the people who adopted it, that the right of trial by jury included, as one of its substantial elements, an absolute right to a trial by a jury of the county where the offense was committed. If such was their intent it must be given effect, the same as though it had been expressly written into the constitution. We are unable, however, to find any ground whatever to sustain the existence of any such intent. On the contrary, there is, in our opinion, convincing evidence that the right of a trial by jury as that right was known at the time of the adoption of the constitution, did not include an absolute right to a trial by a jury of the county where the offense was committed, but that the right was conditioned upon the possibility of a fair and impartial trial being had in that county. In other words, the right of trial by jury, as it now exists, with the right on the part of the state to secure a change of venue to another county when necessary for a fair and impartial trial, is the same as existed when the constitution was adopted.'"

A history of the inherent power of the court to order a change of venue is extensively set out in Crocker v. Justices of Superior Court, 208 Mass. 162, 94 N.E. 369 (1911). The following language in that case is most expressive:

"The weight of opinion in those of the older states, whose judicial history is most nearly like our own, supports the view that it is an inherent power of

common law courts to order a change for the purpose of securing an impartial trial. Cocheco Railroad v. Farrington, 26 N.H. 428, at 436, held that the power of the courts of England to transfer the trial of transitory actions 'became thoroughly ingrafted upon the common law long before the independence of the country; and from that time forth not only has the practice prevailed in the courts of England but the power is now exercised by the courts of very many if not all our states, either by force of direct statute or the adoption of the common law in the jurisprudence of the same.' * * * "

* * * * * *

" * * * 'All laws for removal of causes from one vicinage to another, were passed for the purpose of promoting the ends of justice by getting rid of the influence of some local prejudice which might be supposed to operate detrimentally to the interests and rights of one or the other of the parties to the suit. This is a common-law right belonging to our courts, and as such can be exercised by them in all cases, when not modified or controlled by our constitutional or statutory enactments.' * * * "

* * * * * *

"This review demonstrates that the great weight of authority supports the view that courts, which by statute or custom possess a jurisdiction like that of the King's Bench before our Revolution, have the right to change the place of trial, when justice requires it, to a county where an impartial trial may be had.

" * * * There can be no justice in a trial by jurors inflamed by passion, warped by prejudice, awed by violence, menaced by the virulence of public opinion or manifestly biased by any influences operating either openly or insidiously to such an extent as to poison the judgment and prevent the freedom of fair action. Justice cannot be assured in a trial where other considerations enter the minds of those who are to decide than the single desire to ascertain and declare the truth according to the law and the evidence. A court of general jurisdiction ought not to be left powerless under the law to do within reason all that the conditions of society and human nature permit to provide an unprejudiced panel for a jury trial. Without such a power it might become impossible to do justice either to the general public or to the individual defendant. Our system of government has created the executive, the legislative and the judicial, as three independent and co-ordinate departments, and in strong and comprehensive language has prohibited each from attempting to exercise the functions of either of the others 'to the end that it may be a government of laws and not of men.' The courts of general jurisdiction under such a Constitution have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require."

*Crocker* was cited with approval by the United States Supreme Court in Groppi v. Wisconsin, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971). In State v. Alfonsi, 33 Wis.2d 469, 147 N.W.2d 550 (1967), it was said:

"When it appears that dispassionate evaluation of the evidence is rendered doubtful because of the pressure of publicity, the trial court must act *sua sponte.* In [Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)] the court observed: '* * * [W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates or transfer it to another county not so permeated with publicity.' "

New Mexico has adopted the common law. Section 21-3-3, N.M.S.A. 1953 (Repl. Vol. 4); Sandoval v. Albright, 14 N.M. 345, 93 P. 717 (1908), affirmed 216 U.S. 331, 30 S.Ct. 318, 54 L.Ed. 502. We find nothing in the constitution or statutes limiting the inherent power of the court in this respect. There are statutes which provide procedures by which either party may invoke a ruling of the court by motion and affidavit but we do not deem these in any way restrictive of the court's inherent common law powers. State v. Holloway, supra; So. Union Gas Co. v. City of Artesia, 81 N.M. 654, 472 P.2d 368 (1970).

The process of determining whether or not the facts necessary for a change of venue exist is the same as that followed in determining any other fact in a case. McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968); State v. Nabors, 32 N.M. 453, 259 P. 616 (1927). The trial court was not in error in ordering a change of venue.

 Defendant further argues that he was "unjustly prejudiced by the admission of evidence relating to crimes for which he was not on trial." This argument is predicated upon a remark made during the state's opening statement to the jury and testimony from state's witnesses. The defendant was on trial for assault with intent to commit a violent felony and for false imprisonment of two persons. The prosecution mentioned, in its opening statement, that "a number of people * * * were * * * placed in the County Commissioners' room and held there against their will * * *". Defendant asserts this statement accuses him of additional crimes. If the variance was prejudicial, which is questionable (see State v. Martinez, 83 N.M. 9, 487 P. 2d 919 [Ct.App.1971] ), the court's specific admonishment to the jury shortly after the statement was made, together with later general instructions on the subject, was curative. State v. Ferguson, 77 N.M. 441, 423 P.2d 872 (1967). He also asserts that there was objectionable testimony regarding the condition of the premises, the crime of assault, destruction of property and other acts of the defendant which constituted criminal offenses for which he was not on trial.

The testimony of which the defendant complains was evidence tending to throw some light upon the guilt of the defendant and having a logical connection with the crimes with which he was charged. Evidence which is competent, relevant and material cannot be excluded solely because it also tends to prove the person on trial guilty of some other crime. The courthouse disturbance involved numerous persons, including eleven defendants, and covered a substantial period of time and activity. The movements and conduct of the defendant during this period were clearly admissible to establish his identity, to detail his activities and to characterize his attitude of mind at the time. State v. Borrego, 52 N.M. 202, 195 P.2d 622 (1948). State v. Rowell, 77 N.M. 124, 419 P.2d 966 (1966), relied on by the defendant, is distinguishable upon its facts. There, a single question (asked by the prosecution) was in itself so deliberately improper that its effect could not be erased by admonishment of the jury. Here, the questions of the prosecutor do not indicate in any manner that the state was proceeding in bad faith. The court properly admonished the jury when necessary. Admission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion. Garrett v. Howden, 73 N.M. 307, 387 P.2d 874 (1963).

 Defendant next complains that he was forced to stand trial on a charge for which he received no notice prior to the day of trial. One of the charges against him was the kidnapping of Pete Jaramillo. Four days before trial he was advised that the charge would be changed to false imprisonment of Pete Jaramillo. The state claimed the substitution was necessary by the decision of the Supreme Court in State v. Clark, 80 N.M. 340, 455 P.2d 844 (1969).

The defendant argues that he did not have "official" notice of the specific charge until the day of trial. His objection to proceeding to trial was *pro forma* only. He requested no continuance; he made no plea of surprise; he made no claim that he was not prepared for trial, nor did he assert prejudice. His claim of error is without merit. State v. Alarid, 40 N.M. 450, 62 P.2d 817 (1936). See also State v. Edwards, 54 N.M. 189, 217 P.2d 854 (1950).

■ Defendant argues that the court failed to "properly exercise its discretion when it refused to excuse" a prospective juror for cause. This juror, on voir dire, stated that she watched television, listened to the radio and read the newspaper frequently; that she had formed an opinion that violence occurred at the Rio Arriba County courthouse on June 5, 1967, and that any association between the "Alianza" movement and such violence would possibly influence her decision in the case. She stated that she did not know who the defendant was, where he was on June 5, 1967, or that he was an associate of Reis Lopez Tijerina. She testified that it would have to be proved to her that the defendant was there and that he committed the crimes. She advised the court that she would return a verdict based solely on the evidence and the law given her by the court.

■ The trial court has the duty of seeing that there is a fair and impartial jury. In doing so it must exercise discretion. The trial court's decision will not be disturbed unless there is a manifest error or a clear abuse of discretion. We find none here. State v. Maes, 81 N.M. 550, 469 P. 2d 529 (Ct.App.1970); State v. Verdugo, 78 N.M. 762, 438 P.2d 172 (Ct.App.1968); see State v. Pace, 80 N.M. 364, 456 P.2d 197 (1969).

■ Defendant argues finally that he "was deprived, through the cumulative prejudicial errors of the Trial Court below, of a fair trial and thereby of due process of law." Although this argument is not the doctrine of fundamental error

stated in his brief as the subject matter of this point, the doctrine of cumulative error exists in New Mexico and may be raised as an issue on direct appeal. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct. App. 1967). The defendant seeks a reversal on the grounds that "the cumulative prejudice was so great as to deprive him of a fair trial and thereby deny him due process of law." He does not point to any matter not already raised and answered in this opinion. Compare State v. Roybal, 76 N.M. 337, 414 P.2d 850 (1966). He was afforded a fair trial and his argument is, therefore, without merit.

The judgment and sentence is affirmed. It is so ordered.

WOOD, C. J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I respectfully dissent. Let us remember that the Constitution of the United States and of the State of New Mexico seek to protect an accused in a criminal case and not the government. We must not place the guilt or innocence of an accused in a judicial district decided by the discretion of a trial court contrary to law.

On April 18, 1968, in Cause *No. 4028,* the state filed a criminal information with twenty-eight separate counts in *Rio Arriba County* against eleven defendants, including Juan Valdez, for events which occurred June 5, 1967.

On change of venue, Valdez was tried and convicted in *Bernalillo County,* and judgment and sentence filed July 14, 1969. Notice of appeal was filed July 14, 1969.

On November 4, 1970, this court ordered the Clerk of the District Court for the Second Judicial District to prepare and file in this court all exhibits and all pleadings relating to change of venue. in Cause No. 4028, together with a supplemental transcript to contain hearings on motions for change of venue.

Apart from Cause No. 4028, the record includes a criminal information for kid-

napping in Cause No. 4001 filed in Rio Arriba County on April 18, 1968, and a motion for change of venue in that cause filed by the state on May 13, 1968. *No motion, written, oral, or amended, for change of venue by the state from Rio Arriba County of the First Judicial District in Cause No. 4028 appears in the record.* Valdez did not file a motion for change of venue.

On September 9, 1968, in Cause No. 4028, a hearing occurred on the issues of change of venue and dismissal. Nine attorneys for defendants and three prosecuting attorneys for the state were present. Prior to the hearing, the trial court said:

\* \* \* I intend to take up whatever motions are pending on change of venue from anybody.

The assistant district attorney said:

We filed a Motion for Change of Venue in everyone of the cases, 4000, 4001, *all except in 4028*. [Emphasis added.]

The court then said:

Then as I get it, the Motion you have filed applies to all the cases pending directly.

. \* \* \* \* \* \*

The one that is in the court file is dated May 13, 1968. [This is Cause No. 4001.]

After some discussion over a purported motion by the state for change of venue having been filed June 8, 1967, the court said:

I think the record will show that the Motion for Change of Venue was originally filed by the District Attorney in Cause No. 3938, which was a hearing before a committing Magistrate. That is what this file is, which later resulted in the filing of an Information.

Any claimed motion, oral or written, for change of venue in Cause No. 3938, a hearing before a magistrate, which later

became Cause No. 4028, does not appear in the record.

When the testimony began, Valdez objected to the entire line of testimony; that it was mandatory to try the case in Santa Fe County, if the court found Rio Arriba and Los Alamos Counties not free from exception; that a change of venue to the Second Judicial District was moot by reason of an amended motion for change of venue by defendants Madril and Velasquez. The defendants, including Valdez, agreed that this constitutional right demanded they be tried in Rio Arriba County.

The trial court granted the state the right to file whatever motions or affidavits it had concerning change of venue. The trial court excluded Bernalillo County unless the state controverted this issue in the record. The state responded, "We have written pleadings, we have done so." *These written pleadings do not appear in the record.* This entire proceeding was a hodge-podge of dilly-dally by the state.

Nevertheless, the trial court proceeded with testimony, made findings of fact and conclusions of law, and entered an order changing venue from Rio Arriba County in the First Judicial District to Bernalillo County in the Second Judicial District.

This court is bound by the record on appeal. Our duty is to "examine the record, and on the facts therein contained alone shall award a new trial, reverse or affirm the judgment of the district court, . . . ." Section 21–2–1(17) (1), N.M.S.A. 1953 (Repl. Vol. 4).

Under Article II, Section 14 of the New Mexico State Constitution, the accused shall have "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The word "district" does not mean "judicial district," but simply means the county over which a court may have jurisdiction. It is a right or privilege that may be waived. State v. Balles, 24 N.M. 16, 172 P. 196 (1918); State v. Holloway, 19 N.M. 528, 146 P. 1066 (1914).

This constitutional provision is supported by § 40A–1–15, N.M.S.A.1953 (Repl.Vol. 6) which provides in part:

All trials of crime shall be had in the county in which they were committed.

However, if an impartial jury cannot be obtained in the county in which the offense was committed, the constitutional guaranty for that county no longer controls. It is even the duty of the state to see that a defendant has a fair trial under all the circumstances. State v. Archer, 32 N.M. 319, 255 P. 396 (1927).

In 1965, the legislature amended the venue statutes, §§ 21–5–3 and 21–5–7, N.M.S.A.1953 (Repl.Vol. 4). These amendments allowed a change of venue from one *judicial* district to another. A question arises whether these amendments conflict with the New Mexico Constitution and statute mentioned supra. See State v. Holloway, supra. This question I leave for future consideration.

Questions of venue in criminal cases "raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944).

The question now is: Did the trial court have the power to order a change of venue to a different judicial district contrary to statutory law? The answer is "no."

Section 21–5–3(B), supra, reads as follows:

Any party in any civil or criminal case at issue who desires a change of venue from the county in which the case is pending, and who objects to a change of venue to any other county within the same judicial district for any of the grounds stated in subsection A of this section *shall move for a change of venue on or before the first day of any regular or special term of court.* [Emphasis added.]

It should be noted that the only essential element for the change of venue to a different judicial district is that a party *shall move* for a change of venue at a specific time.

State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967), cert. den. 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668, held that the trial court cannot order change of venue to an adjoining judicial district when an amended motion was not timely filed, even though evidence was taken, because (1) the amended motion supersedes the original motion, and the amended motion only can be considered; and (2) the evidence cannot change the rule of § 21–5–3(B), supra.

The regular terms of Rio Arriba County in 1968 commenced on the third Monday of June and the first Monday of December. Laws of 1961, ch. 188, § 2, [§ 16–3–12.1, since repealed]. The criminal information was filed April 26, 1968. The state did not move for change of venue from the first judicial district on or before June 17, 1968. The order granting the change was void.

The change of venue provisions are mandatory. Deats v. State, 80 N.M. 77, 451 P.2d 981 (1969). Where the statute is violated, the conviction cannot stand. State v. Alaniz, 55 N.M. 312, 232 P.2d 982 (1951).

Furthermore, § 21–5–4, N.M.S.A.1953 (Repl.Vol. 4) provides:

Upon the *filing* of a motion for change of venue, the court may require evidence in support thereof, and upon hearing thereon shall make findings and either grant or overrule said motion. [Emphasis added.]

Where a motion for change of venue is not filed by any party, the trial court does not, under mandatory provisions of a statute, have the inherent power to conduct a hearing and change the venue from one judicial district to another.

The court may require a hearing only "upon the *filing* of a motion for change of venue." Section 21–5–4, supra.

To grant this power in the absence of a motion filed, would deprive the accused of his constitutional right to a speedy, public trial by an impartial jury in the county in which the offense is alleged to have been committed. I believe this principle is strongly indicated in our judicial history. In State v. Holloway, supra, the court said:

> In all that we have had to say upon this subject we desire to be understood as holding that where a trial by an impartial jury can be secured in the county where the crime is committed, *the accused can not be deprived of a trial there, even under the sanction of our legislation upon the subject of change of venue.* This is necessarily so under our legislation as to the right to "a speedy public trial by an *impartial* jury of the county", if one be obtainable. [Prior emphasis added.]

In the absence of a motion filed for change of venue, the trial court must call the case for trial in Rio Arriba County to determine whether Valdez can obtain an impartial jury. If he can, then the trial court does not have the power to change the venue by prior hearing, or otherwise. Under the above circumstances, Valdez cannot be tried in another county without his consent and no act of the legislature can deprive him of that right.

In State v. Lindsey, 81 N.M. 173, 464 P.2d 903 (Ct.App.1969), there is a discussion of the right to raise the issue of change of venue at a date following that provided by statutory provisions when it is the only manner available under the circumstances.

For example, if, during interrogation of jurors, it was clear that Valdez or the state could not obtain an impartial jury, an oral or written motion for a change of venue could then be made. It would be the only manner available under the circumstances. Even if this exception were applicable here, the record does not show that

the state could not have made a motion prior to June 17, 1968, nor does it show that the hearing on September 9, 1968, was the only manner available under the circumstances in which to move for change of venue from one judicial district to another.

The majority opinion relies upon the fact that New Mexico adopted the common law. "This rule does not obtain, however, when the subject matter of any procedural right is fully covered by statute or rule." Sellman v. Haddock, 62 N.M. 391, 310 P.2d 1045 (1957). To my mind, the statutes related to change of venue abrogated any common law rule of inherent power in the trial court to change venue directly contrary to the language of the statutes. Southern Union Gas Company v. City of Artesia, 81 N.M. 654, 472 P.2d 368 (1970). For a case which distinguishes Crocker v. Justices of Superior Court, 208 Mass. 162, 94 N.E. 369, 21 Ann.Cas. 1061 (1911), see State ex rel. Fox v. LaPorte Circuit Court, 236 Ind. 69, 138 N.E.2d 875 (1956).

In criminal cases, the state cannot piddle around for change of venue from county to county or judicial district to judicial district. "Venue is important as a guaranty of the defendant's right to be tried in the vicinity of his criminal activity, and venue requirements are imposed to prevent the government from choosing a favorable tribunal or one which may be unduly inconvenient for the defendant." United States v. Rivera, 388 F.2d 545 (2nd Cir. 1968), cert. den. 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1396. "* * * [I]t is the public policy of this Country that one must not arbitrarily be sent, without his consent, into a strange locality to defend himself against the powerful prosecutorial resources of the Government." Dupoint v. United States, 388 F.2d 39 (5th Cir. 1967).

It is a sad commentary that more than three years have passed since Valdez was charged with a criminal offense; that twenty-two months were wasted to perfect the appeal; that motions for change of venue and controverted pleadings were not

**642**

filed of record; that timeliness, form and substance were absent. This may be charged to the circumstances surrounding an information filed by the state with eleven defendants, twenty-eight separate counts against individuals and groups, sixty-seven listed witnesses, disqualification of district judges, and filed nine months after the alleged offenses were committed. Experience teaches that confusion, error and injustice can arise as easily as the crow flies and as free as the wind.

The conviction and sentence should be reversed. Valdez should be granted a new trial in Rio Arriba County.